IN THE SUPREME COURT OF NORTH CAROLINA

No. 462A19

Filed 20 November 2020

IN THE MATTER OF: S.M., J.M., S.M., A.M., I.M., S.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 8 August 2019 by Judge Hal G. Harrison in District Court, Yancey County. This matter was calendared for argument in the Supreme Court on 7 October 2020 but determined on the record and briefs, without oral argument, pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Daniel M. Hockaday for petitioner-appellee Yancey County Department of Social Services.*

*James M. Weiss for appellee Guardian ad Litem.*

*Christopher M. Watford for respondent-appellant mother.*

*Sydney Batch for respondent-appellant father.*

MORGAN, Justice.

Respondents, the parents of the minor children S.M. (Sarah), J.M. (Jimmy), S.M. (Sam), A.M. (Ann), I.M. (Inez), and S.M. (Sally),[1] appeal from orders terminating their parental rights which were entered by the Honorable Hal G. Harrison, District Court, Yancey County, on 8 August 2019. The trial court found the existence of the

---

[1] Pseudonyms are used to protect the juveniles' identities and to facilitate ease of reading.

ground of neglect and the ground of willful failure to make reasonable progress to correct the conditions that led to the children's removal from the parents' care. Both parents appeal the trial court's decision that termination of their parental rights was in the best interests of their second oldest child, Jimmy. Respondent-mother singly appeals both grounds for termination, arguing that the record does not contain clear, cogent, and convincing evidence that her failure to make reasonable progress was willful, or that the children were at risk of future neglect. Respondent-father also challenges the trial court's denial of his oral motion for a continuance which was made on the day of the termination hearing. The trial court did not err in its denial of respondent-father's motion. Since the trial court properly concluded that grounds for termination of both respondents' parental rights were shown to exist by clear, cogent, and convincing evidence, and that such termination of their parental rights was in the best interests of all six children, consequently we affirm the determinations of the trial court in this case.

### *Factual and Procedural Background*

Respondents are the parents of six children: S.M., J.M., S.M., A.M., I.M., and S.M. The Yancey County Department of Social Services (DSS) received a report on 8 February 2018 that the children were dirty, did not have clothing appropriate for the weather, and had not been enrolled in school since August of 2016. A second report dated 16 February 2018 alleged concerns about sexual abuse of the eldest child,

Sarah, by respondent-father. Following an investigation of this report, DSS placed the children with their maternal grandparents as a safety resource on the same date.

On 23 February 2018, DSS filed petitions alleging that Sarah was an abused and neglected juvenile and that Jimmy, Sam, Ann, Inez, and Sally were neglected juveniles. DSS also obtained nonsecure custody of all six children on the same date. The petitions detailed the investigations of both reports, in which a social worker observed that the children were dirty and had an unpleasant odor; the house was unclean, sparsely furnished, and had a terrible odor; the children had not been enrolled in public school since 31 August 2016; and respondents could not provide documentation to prove that the children were being homeschooled. Substance abuse and domestic violence issues in the home were described in the DSS court filings. In one such instance, the children and respondent-mother reported that earlier in February 2018, respondent-father had poured alcohol on respondent-mother and had set her on fire in front of the children.

Upon filing the abuse and neglect petitions, DSS developed many of the same concerns with the maternal grandparents in their capacity as a safety resource for the children as the agency had expressed with the respondents' home. As a result, DSS placed the children at Black Mountain Home for Children. The children remained in this placement for the duration of the case, except for respondents' second eldest child, Jimmy, whom DSS transferred to a therapeutic foster home due to behavioral issues.

The trial court held a hearing on the abuse and neglect petitions on 10 May 2018. It adjudicated the children to be neglected juveniles and entered an order reflecting this determination in open court on the same day. The order was signed by the trial court and filed on the respective dates of 15 and 18 June 2018. At a disposition hearing held on 18 June 2018, the trial court found that the barriers to reunification were substance abuse, housing instability, domestic violence, a history of sexual abuse, the children's lack of schooling, and respondents' lack of progress on their case plan. In a written order signed on 25 September 2018 which referenced the 18 June 2018 hearing, the trial court ordered respondents to obtain substance abuse and mental health assessments, and to comply with the recommendations resulting from those evaluations. Additionally, respondents were directed to find and maintain employment in order to provide for the basic needs of the children, as well as to be able to provide housing which was sufficient to accommodate a large family. Respondent-father was also ordered to obtain a psychosexual evaluation. In a review order entered 1 November 2018, the trial court maintained the children's permanent plan as reunification with respondents, but also found many of the same barriers to reunification as still intact, including substance abuse issues, domestic violence, housing instability, and a general lack of progress on respondents' DSS case plan. The trial court required ongoing efforts on the part of respondents to comply with each directive contained in the original disposition order which was entered after the 18 June hearing.

The trial court held a permanency planning hearing on 28 January 2019. In an order entered on 19 February 2019, the trial court changed the permanent plan from reunification to adoption with a concurrent plan of guardianship, consequently ceasing reunification efforts with respondents. The permanency planning order detailed a significant lack of compliance with the DSS case plan and prior orders of the court. While respondents had obtained substance abuse assessments which resulted in no recommendations, each of them subsequently had failed additional drug screens and had refused to take other tests offered by DSS as ordered in their case plan. While respondents reported that they were living in a single-family home leased by the father of respondent-mother, they offered inconsistent accounts about the duration of time that they were able to stay there. Respondents refused to provide DSS with court-ordered information, including their prescriptions and sources of income. They also failed to be forthcoming with information that they had changed addresses when county officials attempted to initiate child support litigation against them. Despite claiming substantial income from a plumbing and electrical business that the couple reportedly ran, respondents had failed to pay any money towards the children's support and had failed to secure a residence suitable for a large family on their own initiative. In addition, respondent-father had failed to pay for his psychosexual evaluation during the seven months since the trial court had ordered the assessment. While the trial court noted that respondents had completed parenting classes as ordered, the couple still "failed to comply with a majority of the

case plan requirements . . . ." In finding the existence of these aforementioned facts and circumstances in its 19 February 2019 order, the trial court suspended visitation privileges of respondents until they complied with their case plan, relieved DSS of its duty to further provide reasonable efforts to reunify respondents with their children, and ordered DSS to file termination of parental rights petitions as to both respondents.

On 28 February 2019, DSS filed petitions to terminate respondents' parental rights to the children, alleging the grounds of neglect and willful failure to make reasonable progress to correct the conditions that led to the children's removal from their care. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019). The trial court conducted the termination of parental rights hearing on 28 May 2019, at which time respondent-father's attorney made several preliminary requests. Relevant to this appeal, counsel for respondent-father noted for the trial court that the parties had received the report of respondent-father's psychosexual evaluation only the day before the hearing via facsimile transmission, and moved for a continuance "for the father to be able to respond to that evaluation by following recommendations." The trial court denied the continuance motion, citing the protracted time period which elapsed between the tribunal's order for the evaluation and the point at which respondent-father chose to address the issue.

At the hearing, DSS elicited testimony from the social worker who was assigned to the children's cases. Cross-examination of the DSS witness ensued after

her direct examination. Following closing statements, the trial court found "complete and total irresponsibility" on the part of respondents in complying with their case plan. Specifically, the trial court stated that, based on the neglect that compelled the removal of the children from respondents' care in the first place, and combined with the respondents' conduct during the fifteen months preceding the hearing, it was "highly likely" that neglect of the children would continue. Likewise, the parents had "allowed the children to remain in [DSS] custody for a period of twelve months without making any substantial progress" on their case plans. The trial court expressed amazement with the social worker's testimony that a prospective adoptive family had indicated a willingness to accept all six children, found that a bond had already formed between the family and the children, and determined that termination of respondents' parental rights remained as the only barrier between the children and adoption. The trial court entered six orders on 8 August 2019, ultimately concluding that there was clear, cogent, and convincing evidence that grounds existed to terminate respondents' parental rights as alleged in the petition, and that terminating respondents' parental rights was in the best interests of each child. Respondents appealed.

### *Analysis*

In this matter, we examine respondent-mother's appeal and respondent-father's appeal separately; we combine each parent's individual challenge to the trial court's decisions only with regard to their mutual position that the trial court erred

in its conclusion that termination of their parental rights was in the best interests of their child, Jimmy. First, we address respondent-father's separate contention that the trial court's denial of his oral motion to continue the 28 May 2019 termination of parental rights hearing violated his due-process rights, before discussing respondent-mother's individual argument that the trial court's findings of two different grounds for termination of her parental rights were unsupported by clear, cogent, and convincing evidence. We note here that the trial court entered a separate termination order for each of respondent-mother's six children, with each order containing virtually identical findings of fact and conclusions of law supporting the trial court's adjudications. In order to facilitate our discussion of the salient matters pertaining to the adjudication of grounds for termination involving all six of the juveniles with respect to respondent-mother's argument, we shall refer to the findings of fact and conclusions of law as enumerated in the trial court's termination order entered in Jimmy's case. Lastly, we review the respondents' united argument.

*A. Motion to Continue*

Respondent-father first argues that the trial court erred in denying his motion to continue the termination hearing "after counsel received [respondent-father's] psychosexual evaluation the day prior to trial and was unable to prepare or call witnesses based on said evaluation." Respondent-father asserts that "[i]t was evident that [respondent-father's] counsel did not have sufficient time to prepare for how the evaluation may be used in the TPR trial nor did he have time to subpoena any

necessary witnesses." Therefore, respondent-father contends that the trial court violated his constitutional right to due process, as that right, combined with the right to counsel and the right to confront witnesses, includes a guarantee in favor of parties to have a reasonable time to prepare their case according to *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

"Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.*, 374 N.C. 515, 516—17, 843 S.E.2d 89, 91 (2020) (quoting *State v. Walls*, 342 N.C. 1, 24, 463 S.E.2d 738, 748 (1995)). "However, if 'a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal.' " *State v. Jones,* 342 N.C. 523, 530–31, 467 S.E.2d 12, 17 (1996) (quoting *State v. Covington,* 317 N.C. 127, 129, 343 S.E.2d 524, 526 (1986)). Although respondent-father argues on appeal that the trial court's denial of his motion to continue violates his due-process rights to prepare his defense and to subpoena witnesses, respondent-father did not assert this position at the termination hearing. Respondent-father argued at the hearing that the continuance was necessary "in order for [respondent-father] to be able to respond to [the psychosexual] evaluation by following recommendations." Because respondent-father did not assert before the trial court that a continuance was necessary to protect a constitutional right, that position is waived and we are constrained to review the trial court's denial of his motion to continue for abuse of discretion. *In re A.L.S.*, 374 N.C. at 516—17,

843 S.E.2d at 91. "An '[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (alteration in original) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

Our state's Juvenile Code offers controlling guidance on the continuance of a termination of parental rights hearing with regard to the date on which a petitioning party initiates such a termination proceeding. In juvenile cases, the trial court

> may for good cause shown continue the hearing for up to 90 days from the date of the initial petition in order to receive additional evidence including any reports or assessments that the court has requested, to allow the parties to conduct expeditious discovery, or to receive any other information needed in the best interests of the juvenile. Continuances that extend beyond 90 days after the initial petition shall be granted *only in extraordinary circumstances when necessary for the proper administration of justice*, and the court shall issue a written order stating the grounds for granting the continuance.

N.C.G.S. § 7B-1109(d) (2019) (emphasis added). Furthermore, "[c]ontinuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." *In re D.W.*, 202 N.C. App. 624, 627, 693 S.E.2d 357, 359 (2010) (quoting *In re Humphrey,* 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003)).

In the present case, the transcript from the termination hearing shows that respondent-father's counsel made an oral motion to continue at the start of the termination hearing on 28 May 2019, advising the trial court that all parties had received the psychosexual evaluation report regarding respondent-father just the previous day through facsimile transmission. The attorney argued that a continuance was necessary "in order for [respondent-father] to be able to respond to that evaluation by following recommendations." DSS objected to the continuance motion, asserting that the fault for the delayed receipt of the results rested solely with respondent-father because he did not present himself to Crossroads Counseling Center (Crossroads) to begin the evaluation until 22 January 2019, seven months after he was first ordered to complete it. In response to the objection of DSS, respondent-father submitted that the delay was due in part to his inability to pay the required $500.00 down payment for the evaluation, as well as his difficulty in finding a provider to complete the evaluation.

The 28 May 2019 hearing at which respondent-father made his motion was conducted 89 days after the termination petitions were filed on 28 February 2019. Thus, any continuance granted in the matter would obviously have extended the occurrence of the hearing beyond 90 days after the filing of the termination petitions. Although the trial court had ordered respondent-father to complete the evaluation in June 2018, nearly a year prior to the termination hearing, respondent-father did not go to Crossroads to begin the evaluation process until 22 January 2019. At a

permanency planning hearing which was held six days later on 28 January 2019, respondent-father was reminded that two more evaluation sessions were needed to complete the process; however, he proceeded to miss two appointments on 13 February 2019 and 25 March 2019.

Due to the applicable authority of N.C.G.S. § 7B-1109(d) and the appellate case law of *In re Humphrey* as construed in *In re D.W.*, respondent-father must show, as the movant for a continuance of the termination of parental rights hearing, the existence of extraordinary circumstances for the continuance and its necessity for the proper administration of justice. Here, respondent-father has failed to demonstrate to the trial court that good cause exists for the continuance of the termination of parental rights hearing to a juncture beyond 90 days from the date of the initial petition. Respondent-father's procrastination in addressing his court-ordered obligation to report to Crossroads for the essential evaluation directly resulted in the shortness of time for the parties involved in the hearing to have access to the psychosexual evaluation of respondent-father. The trial court did not abuse its discretion in heeding the standards of N.C.G.S. § 7B-1109(d) in its determination that extraordinary circumstances did not exist so as to make it necessary for the proper administration of justice to grant respondent-father's continuance motion in order to have more time to review the psychosexual evaluation report which he himself had delayed due to his slowness to fulfill the trial court's directive. The trial court's denial of the continuance request was within its discretion, and since continuances are not

favored and good cause for the termination hearing's continuance was not shown within the purview of the cited statute, there was not an abuse of the trial court's discretion in its denial of the motion.

### B. Grounds

Respondent-father concedes that DSS met its burden in establishing grounds to terminate his parental rights. Respondent-mother argues, however, that the trial court erred in concluding that grounds existed to terminate her parental rights to the children pursuant to N.C.G.S. § 7B-1111(a)(2) because the findings of fact do not support the court's determination that she willfully failed to make reasonable progress to correct the conditions that led to the children's removal from her care. Among her contentions, respondent-mother takes issue with the trial court's Finding of Fact 12, citing a lack of evidentiary basis for the trial court's conclusions that respondent-mother tested positive for drugs on 5 February 2019, that she "continued to test positive" or "refused to comply with requested drug screens," that she "evaded service of child support paperwork," and that she failed to provide a home address to DSS. We address each of respondent-mother's issues, including Finding of Fact 12, along with examining her overall contention that the trial court never explained why it found her noncompliance with the court-ordered case plan to be willful.

This Court reviews a trial court's adjudication that grounds exist to terminate parental rights "to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re*

*E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *Id.* at 407, 831 S.E.2d at 58–59 (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

In determining that respondent-mother willfully failed to make reasonable progress, the trial court found that, in order to comply with the case plan, respondent-mother was required "to obtain and maintain stable and suitable housing; maintain employment; obtain a substance abuse assessment and comply with treatment recommendations from the same; submit to requested random drug screens; participate in recommended therapy; attend [child and family team meetings]; and exercise visitations." The trial court further found in Finding of Fact 12:

> 12. . . . The parents have not complied with the terms of the DSS case plan in that the parents have not maintained stable housing; have failed to provide DSS information regarding their housing; have failed to provide documentation as to employment and income; have failed to provide their address to DSS; that their initial substance [abuse] assessments contained no recommendations; the

> parents tested positive for controlled substances thereafter; that the parents were ordered to obtain a second substance abuse assessment; that the parents have not obtained that assessment; have continued to test positive for controlled substances and/or refused to comply with requested drug screens; had a recent positive drug screen (02/05/19); have missed some scheduled DSS meetings; have failed to provide copies of prescriptions to DSS although being ordered to do so; . . . that domestic violence counseling is also recommended and the parents have not participated in the same at this point; the parents' visitations have been suspended by prior [o]rder of the [c]ourt; that the parents have failed to provide for the monthly support for juveniles; have evaded the service of child support paperwork from the local child support agency; have acted in a generally uncooperative manner with respect to DSS workers; and have not remedied the reasons the juveniles came into DSS custody.

Regarding this finding at issue, respondent-mother directs our attention to the social worker's testimony that during the social worker's interactions with respondent-mother, respondent-mother provided a house number for an address. Respondent-mother submits that this information refutes the trial court's determination contained in Finding of Fact 12 that states that respondent-mother "failed to provide [her] address to DSS." However, a review of the social worker's testimony about this subject beyond the isolated reference illuminated by respondent-mother reveals that respondent-mother's mere identification of a house number does not constitute a provision of her address to DSS in light of conflicting and even incorrect residential information which also was supplied. A fuller examination of the social worker's testimony shows that she was unable to locate the residence after respondent-mother

and respondent-father provided contradictory addresses. The social worker also testified that she had received conflicting information from respondents as to whether they owned or rented the residence. Upon consideration of this broader context of respondent-mother's compliance with the case plan as to the furnishment of the address to DSS, the trial court's finding of fact that respondent-mother had failed to provide her address is supported by clear, cogent, and convincing evidence.

Respondent-mother also disputes the segment of Finding of Fact 12 that the parents "have continued to test positive for controlled substances and/or refused to comply with requested drug screens." She concedes that she refused drug screens previously requested by DSS, but that there was no evidence that DSS offered another drug screen after her negative drug test of 5 February 2019. Respondent-mother therefore posits the deduction that there "can be no reasonable inference drawn for the affirmative finding that [she] 'continues to test positive' or 'refused to comply' with requested drug screens without evidence those screens were actually requested." Respondent-mother's creative rationale is unpersuasive.

At the hearing, the social worker testified that after the parents' first substance abuse assessment, they both subsequently tested positive for controlled substances. The social worker confirmed that respondent-mother refused drug screens previously requested by DSS and that there were occasions when both parents left the DSS building without taking drug tests when asked by the agency to submit to drug screens prior to departure from its site. While the social worker did

not testify as to the timing of respondent-mother's positive drug test results or the frequency of respondent-mother's drug screen refusals, nonetheless the trial court's determination that the evidence at the hearing had shown that, during the course of the case plan, respondent-mother along the way had "continued to test positive" and/or had "refused to comply with requested drug screens" is supported by clear, cogent, and convincing evidence. The lack of specificity regarding any positive drug screens or refusals of drug screens by respondent-mother after 5 February 2019 does not render the trial court's determination based on the social worker's competent and uncontroverted testimony to be unsupported.

Respondent-mother next challenges the portion of Finding of Fact 12 which states that the parents "had a recent positive drug screen (02/05/19)," asserting that the determination is contrary to DSS's own evidence. She claims that the social worker testified that respondent-father tested positive on 5 February 2019 while respondent-mother "tested clean." We agree with respondent-mother's assertion on this point; the uncontested testimony of the social worker indeed establishes that respondent-mother tested negative for controlled substances on 5 February 2019. Therefore, we disregard this portion of Finding of Fact 12 as it pertains to respondent-mother. *In re N.G.*, 374 N.C. 891, 901, 845 S.E.2d 16, 24 (2020) (disregarding findings of fact not supported by clear, cogent, and convincing evidence).

Respondent-mother then contests the aspect of Finding of Fact 12 that she "evaded the service of child support paperwork from the local child support agency."

Respondent-mother was not ordered to pay child support as part of her case plan, and therefore this finding is not germane to the trial court's adjudication of grounds for termination under N.C.G.S. § 7B-1111(a)(2), that she willfully left the children in foster care or placement outside the home for more than twelve months without making reasonable progress to correct the conditions prompting removal of the juveniles. As a result, we need not address this challenge. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58–59.

Respondent-mother contends that the remaining contents of Finding of Fact 12 do not support the trial court's conclusion that she willfully failed to make reasonable progress. Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). "[A] finding that a parent acted 'willfully' for purposes of N.C.G.S. § 7B-1111(a)(2) 'does not require a showing of fault by the parent.' " *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (quoting *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996)). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). This Court has stated that "a trial judge should refrain

from finding that a parent has failed to make 'reasonable progress . . . in correcting those conditions which led to the removal of the juvenile' simply because of his or her 'failure to fully satisfy all elements of the case plan goals.' " *In re B.O.A.*, 372 N.C. 372, 385, 831 S.E.2d 305, 314 (2019) (alteration in original) (citation omitted). However, "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *Id.* (citation omitted).

Respondent-mother represents that she made progress on her case plan and "changed those things she could control." She asserts that the record demonstrates that she completed parenting classes and obtained a comprehensive clinical assessment which resulted in no further recommendations for her to follow. This assertion of respondent-mother must be evaluated with a recognition that the referenced clinical assessment was based on her self-report alone without any contact or solicitation of information from DSS, after which respondent-mother proceeded to test positive for opiates. While respondent-mother trumpets her regular attendance of visitations with the children and that she only stopped spending such time with the juveniles due to a court order, it is worthy of note that the visitations were ceased due to respondent-mother's repeated noncompliance with stipulated rules to be followed during the visitations. Respondent-mother offers the bald assertion that she had secured housing, and that she "attempted to secure employment and continued

to seek out opportunities," while supporting these claims only with the reference that she failed to show up for work on her first day on a new job and consequently was terminated. As to her representation that she obtained housing, respondent-mother did not challenge the trial court's findings that she failed to maintain stable housing and to provide DSS with information regarding her housing, and therefore these findings are binding on appeal. *In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58.

Respondent-mother additionally maintains that she "refrained from the use of illegal drugs as indicated by her negative drug screen on 5 February 2019"; that she "refrained from domestic violence situations"; and that "DSS could present no evidence that she gained criminal charges or otherwise behaved in a manner that was unfit for the minor children." Respondent-mother's contention that she "refrained from domestic violence situations" is unfounded, as she never completed the domestic violence counseling ordered by the trial court, and continued to relate and reside with respondent-father whom she claimed set her on fire in front of the children. Having presented no evidence of her own during the hearing, respondent-mother's completion of parenting classes and the registration of a single negative drug screen stand alone as affirmative attainments by her toward the successful fulfillment of her case plan, while the remainder of the record illustrates respondent-mother's lack of reasonable progress in correcting the conditions which led to the removal of the children from the home. *See In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 224–25 (1995) ("Extremely limited progress is not reasonable progress.").

Respondent-mother contends that although the trial court's Finding of Fact 12 "contain[s] language characterizing [respondent-mother's] failures as willful," it "never explains for the purposes of appellate review, why this demonstrates willfulness." Specifically, she argues that the trial court never made findings regarding respondent-mother's ability to make progress on her case plan, and the findings "are silent on the ways that [respondent-mother] could overcome barriers such as transportation and cost to complete such a plan."

There is no evidence in the record that respondent-mother had any barriers in her ability to comply with the case plan or any circumstances that would render it unduly difficult for her to meet the requirements. Indeed, respondent-mother has failed to direct this Court to any such evidence. After the removal of the children from the care of respondent-mother, her "prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress . . . sufficient to warrant termination of parental rights under section 7B-1111(a)(2)." *In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 (quoting *In re J.W.*, 173 N.C. App. 450, 465–66, 619 S.E.2d 534, 545 (2005), *aff'd per curiam*, 360 N.C. 361, 625 S.E.2d 780 (2006)). We have cited and applied the pertinent appellate case law regarding the manner in which respondent-mother's failures and incompletions constitute "willfulness" under N.C.G.S. § 7B-1111(a)(2). Therefore, we hold that the findings of fact sufficiently demonstrate willfulness in respondent-mother's lack of progress.

The trial court's findings demonstrate that respondent-mother failed to fully cooperate with the DSS social workers; failed to obtain stable housing, employment, and income; failed to participate in domestic violence counseling; failed to complete a second substance abuse assessment after being ordered to do so; failed to provide DSS with a list of her prescriptions as ordered; and failed to provide DSS with accurate information and court-ordered documentation in order to verify that she was meeting her case plan requirements. Based upon all of the noted shortfalls in respondent-mother's compliance with her case plan as established by the trial court, we conclude that the trial court's findings of fact support its decision to find the existence of the ground that respondent-mother willfully failed to make reasonable progress to correct the conditions that led to the children's removal from the home. *See In re L.E.W.*, 375 N.C. 124, 139, 846 S.E.2d 460, 471 (2020) (holding that even though the mother had "made some progress toward compliance with the provisions of her case plan, she had failed to make reasonable progress toward correcting the conditions that had led to" the child being removed from the home).

In light of our conclusion that the trial court properly adjudicated a ground for terminating respondent-mother's parental rights under N.C.G.S. § 7B-1111(a)(2), we deem it unnecessary to address respondent-mother's contentions regarding the ground of neglect. *See In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019); *In re E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 53 ("[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court

determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.' " (alteration in original)).

## C. *Best Interests Determination*

Both respondents argue that the trial court erred in finding that termination of their parental rights as to the child Jimmy served the juvenile's best interests. They challenge several portions of the trial court's Finding of Fact 15 with regard to its best interests conclusion, while claiming that the prototypical nature of the trial court's order terminating their parental rights to Jimmy failed to account for his unique circumstances. In addition, respondent-mother independently argues that the trial court committed reversible error by failing to address two of the six best interests factors found in N.C.G.S. § 7B-1110(a). Neither respondent-mother nor respondent-father challenges the trial court's determinations as to the best interests of the other five children. While we agree with respondents that two portions of the trial court's Finding of Fact 15 lack sufficient evidentiary foundation, thus compelling us to disregard them, the remaining findings of the trial court and composition of the record provide an abundance of support for the conclusion that termination of respondents' parental rights regarding Jimmy was in the best interests of the child.

In determining whether termination of parental rights is in the best interests of the juvenile,

the court shall consider the following criteria and make written findings regarding the following *that are relevant*:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019) (emphasis added).

"The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6, 832 S.E.2d 698, 700 (2019). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. at 107, 772 S.E.2d at 455 (quoting *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527). "The trial court's dispositional findings are binding on appeal if supported by any competent evidence." *In re J.S.*, 374 N.C. at 822, 845 S.E.2d at 75. The trial court's position offers the most candid weighing of the evidence, thus its findings as to the disposition of respondents' parental rights "cannot be upset" if the record contains any competent evidence supporting such a

disposition. *Stephens v. Stephens*, 213 N.C. App. 495, 503, 715 S.E.2d 168, 174 (2011)

(quoting *Metz v. Metz*, 138 N.C. App. 538, 541, 530 S.E.2d 79, 81 (2000)).

Here the trial court entered the following Finding of Fact 15 regarding the

factors set forth in N.C.G.S. § 7B-1110(a):

> 15. That the [c]ourt finds by clear, cogent and convincing evidence that it is in the best interests of the juvenile that the parental rights of the respondent parents be terminated in that the respondent parents were given an opportunity to comply with the DSS case plan to reunify with the juvenile; the parents have failed to comply with the terms of the same; that at the permanency planning hearing held 28 January, 2019, DSS was relieved of providing further efforts to reunify the juvenile with the respondent parents; the parents have failed to eliminate those reasons the juvenile came into DSS custody; the parents have failed to provide for the financial support of the juvenile; the juvenile's permanent plan is designated adoption; that DSS is seeking an adoptive family for the juvenile; that an adoptive family has been identified and is willing to take the juvenile and siblings; that a bond has been established with these individuals; that although acknowledging the parents have a bond with the juvenile the visitations for the parents have been suspended by prior [o]rder of the [c]ourt due to their failure to comply with case plan requirements; that one of the remaining barriers to implementing that permanent plan is termination of parental rights; that terminating parental rights of the respondent parents would assist DSS in achieving the permanent plan for the juvenile; that the juvenile is currently placed at Black Mountain Children's Home; the juvenile is thriving in that placement; the juvenile's current physical, emotional and educational needs are being met; these needs were not met in the home of the respondent parents; that the Guardian Ad Litem Report recommended termination of parental rights to be in the interests of the juvenile.

Respondents challenge passages of Finding of Fact 15 as being unsupported by the evidence. First, respondents dispute the portion of the finding which states that Jimmy had formed a bond with the prospective adoptive parents, asserting that DSS did not present any evidence to support this determination. We disagree. The social worker testified that DSS had identified a prospective adoptive family that was interested in adopting all six children. Her testimony described the bond which had formed between the prospective adoptive family and each of the children, coupled with a fondness between each of them as denoted by an earnest desire of the juveniles to visit and live with the identified family. Reporting generally on all six juveniles, including Jimmy, the social worker stated that each child spoke highly of the prospective adoptive family. She further confirmed Jimmy's inclusion in the process of building the familial bond by describing his visits with the family later in the hearing. We find that this evidence is competent to support the trial court's finding of an established bond between Jimmy and the prospective adoptive parents.

Second, respondents attack the section of Finding of Fact 15 that states that Jimmy was thriving in his placement at Black Mountain Children's Home. Respondent-father points out that Jimmy was removed from the placement in March 2019; both respondents contend that DSS presented no evidence that Jimmy thrived while he resided there. We agree with respondent-father and respondent-mother that this element of Finding of Fact 15 is not supported by the evidence. DSS supplied the report for the termination hearing that indicated that Jimmy was residing and

thriving at Black Mountain Children's Home on 22 February 2019, three months before the termination hearing. The social worker testified at the hearing, however, that Jimmy was removed from Black Mountain Children's Home in March 2019 due to behavioral issues and was currently in a therapeutic foster home where he was "doing very well." We therefore disregard the portion of Finding of Fact 15 which states that Jimmy was "currently placed at Black Mountain Children's Home" and was "thriving in that placement," because the evidence does not support it. *See In re N.G.*, 274 N.C. at 901, 845 S.E.2d at 24.

Respondents also challenge the trial court's establishment in Finding of Fact 15 that the Guardian ad Litem (GAL) report recommended that it was in the best interests of the juvenile that respondents' parental rights be terminated. Respondents argue that the GAL report was not admitted into evidence at the hearing and that the GAL did not testify because she was not present at the hearing. We agree with respondents' position in this challenge. The transcript from the hearing indicates only that a copy of the GAL report was "distribute[d]" to the parties and to the trial court before the start of the termination hearing; the transcript does not show that the GAL report was admitted into evidence by the trial court during the hearing. The GAL report was not included in the record on appeal and there is nothing in the record to show that the GAL testified at the hearing. Therefore, we find that there was not competent evidence of record to support a consideration of the GAL's recommendation by the trial court regarding the best interests of the child

Jimmy, and we therefore pay no heed to this portion of Finding of Fact 15. *See In re N.G.*, 374 N.C. at 901, 845 S.E.2d at 24.

Respondent-mother further argues that the trial court failed to make necessary findings regarding all of the factors set forth in N.C.G.S. § 7B-1110. She asserts that the trial court neglected to make findings with respect to both Jimmy's age and the likelihood of his adoption. "Although the trial court must consider each of the factors in N.C.G.S. § 7B-1110(a), written findings of fact are required only 'if there is "conflicting evidence concerning" the factor, such that it is "placed in issue by virtue of the evidence presented before the [trial] court[.]" ' " *In re J.S.*, 374 N.C. at 822, 845 S.E.2d at 75 (alterations in original) (citation omitted). Here, neither party disputed the fact that Jimmy was twelve years old at the time of the termination hearing, and the record does not reflect any controversy concerning the relevance of Jimmy's age in a calculation of his best interests. Therefore, the trial court was not required to make a finding on the factor of Jimmy's age in determining the juvenile's best interests.

As to the factor of Jimmy's likelihood of adoption, the trial court found "that an adoptive family has been identified and is willing to take the juvenile and siblings . . . ." The social worker testified at the termination of parental rights hearing that DSS had "identified [a] pre-adoptive home that is interested in adopting all six kids" and that the home was "a licensed home through Black Mountain [Children's Home]." In considering the factor of likelihood of adoption as codified in N.C.G.S. § 7B-

1110(a)(2), the trial court must endeavor to ensure that the drastic action of terminating a respondent's parental rights operates to achieve the concrete goal of a permanent home for the child. Supported by the competent and uncontested testimony of the social worker, the trial court sufficiently addressed in written format the statutory factor of the juvenile's likelihood of adoption under N.C.G.S. § 7B-1110(a)(2) in finding that there was a home interested in adopting all six children, thus including Jimmy. We do not require a trial court to reproduce the exact language of the statute in its findings, as confronting the concern of the statute will suffice. *See In re L.M.T.*, 367 N.C. 165, 168, 752 S.E.2d 453, 455 (2013) ("The trial court's written findings must address the statute's concerns, but need not quote its exact language.").

Respondents also contend that the trial court abused its discretion in determining that termination of their parental rights was in Jimmy's best interests because it failed to consider the child's unique circumstances and needs arising from his behavioral issues. Both respondents rely on the Court of Appeals decision in *In re J.A.O.*, 166 N.C. App. 222, 601 S.E.2d 226 (2004) to support their arguments.

The juvenile in *In re J.A.O.* had "a history of being verbally and physically aggressive and threatening, and he ha[d] been diagnosed with bipolar disorder, attention deficit hyperactivity disorder, pervasive developmental disorder, borderline intellectual functioning, non-insulin dependent diabetes mellitus, and hypertension." *Id*. at 228, 601 S.E.2d at 230. At the time of the termination hearing, the juvenile was fourteen years old, had been in foster care since he was eighteen months old, and had

been in nineteen different treatment centers during that time. *Id*. at 227, 601 S.E.2d at 230. The GAL testified at the hearing that the juvenile was an unlikely candidate for adoption and that termination was not in his best interests because it would "cut him off from any family that he might have." *Id*. On appeal, the Court of Appeals held that the trial court abused its discretion in concluding that termination of the mother's parental rights was in the juvenile's best interests. *Id*. at 228, 601 S.E.2d at 230. The lower appellate court reasoned that "after 'balancing the minimal possibilities of adoptive placement against the stabilizing influence, and the sense of identity, that some continuing legal relationship with natural relatives may ultimately bring, we must conclude that termination would only cast [the juvenile] further adrift.' " *Id*. (citation omitted). Therefore, the Court of Appeals determined that rendering the juvenile a "legal orphan" was not in the juvenile's best interests. *Id*. at 227, 601 S.E.2d at 230.

The instant case is readily distinguishable from *In re J.A.O.* Here, although Jimmy was diagnosed with attention deficit hyperactivity disorder and post-traumatic stress disorder, his diagnoses and behavioral issues remain significantly less severe than the juvenile's more numerous and challenging conditions in *In re J.A.O.* The trial court in the case at bar did not find that Jimmy's behavioral issues made adoption unlikely, and instead recognized that a pre-adoptive home was interested in adopting Jimmy and his five siblings; on the other hand, the trial court in *In re J.A.O.* determined there that "it is highly unlikely that a child of [the

juvenile's] age and physical and mental condition would be a candidate for adoption, much less selected by an adoptive family." *Id.* at 228, 601 S.E.2d at 230. Furthermore, while the trial court in the current case expressly found that the evidence sufficiently established the existence of the ground that respondent-mother failed to show that reasonable progress had been made in correcting those conditions which led to the removal of the juvenile, the trial court in *In re J.A.O.* noted that "evidence tended to show that respondent had made reasonable progress to correct the conditions that led to the petition to terminate her parental rights." *Id.* at 224, 601 S.E.2d at 228. Respondents' reliance on *In re J.A.O.* is misplaced regarding their contention that the trial court here abused its discretion in terminating their parental rights in light of Jimmy's behavioral challenges. In *In re J.A.O.*, the Court of Appeals determined that the juvenile's "woefully insufficient support system" caused the appellate court to "conclude that termination [of parental rights] would only cast [the juvenile] further adrift." *Id.* at 227–28, 601 S.E.2d at 230. We have no basis upon which to find that the trial court abused its discretion regarding Jimmy's circumstances where the evidence supports an optimism for the juvenile's well-being which is already being advanced by a potential adoptive family. Such prospects justify the trial court's decision that termination of respondents' parental rights was in the child Jimmy's best interests.

## *Conclusion*

Based upon the foregoing considerations, this Court determines that the trial court properly acted within its discretion in denying respondent-father's oral motion to continue the termination of parental rights hearing. The trial court did not err in finding that grounds existed to terminate respondent-mother's parental rights based on its determination under N.C.G.S. § 7B-1111(a)(2) that respondent-mother willfully left the juveniles in foster care or in a placement outside the home for more than twelve months without showing to the satisfaction of the trial court that reasonable progress under the circumstances had been made in correcting those conditions that led to the removal of the juveniles, as clear, cogent, and convincing evidence supported this determination. The trial court did not abuse its discretion in concluding that it was in the best interests of the child Jimmy that the parental rights of respondent-mother and respondent-father be terminated. Accordingly, we affirm the trial court's orders terminating respondents' parental rights to each of their six children.

AFFIRMED.