MICHAEL STEPHENS v. SAMANTHA STEPHENS (NOW COLVILLE)

No. COA10-943

(Filed 19 July 2011)

**1. Child Custody and Support— modification—substantial change in circumstances**

The trial court did not err in a child custody modification case by concluding a substantial change in circumstances affected the welfare of the children. Even if the children have not yet been actually harmed by defendant's actions, the court does not have to wait until the substantial change causes harm.

**2. Child Custody and Support—modification—best interests of child**

The trial court did not abuse its discretion by concluding there was substantial evidence that modification of a previous child custody order was in the best interests of the children.

Appeal by Defendant from Judgment entered 19 January 2010 by Judge Robert W. Bryant, Jr., in Harnett County Domestic Relations Court. Heard in the Court of Appeals 9 February 2011.

*Jones and Jones, P.L.L.C., by Cecil B. Jones for Plaintiff-appellee.*

*McLeod & Harrop, by Donald E. Harrop, Jr., for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Samantha Stephens ("Defendant") appeals from a Custody Order vesting primary custody of Defendant's two minor children with their Plaintiff-father. Defendant argues the trial court erred in granting Plaintiff's Motion to Modify Custody. We disagree and affirm the Order.

### I. Factual and Procedural History

Michael Stevens ("Plaintiff") and Defendant married on 10 April 1998. During the marriage, Plaintiff and Defendant had two children. Plaintiff and Defendant separated on 9 November 2003 and divorced on 20 January 2005.

In October 2005, Plaintiff filed a Complaint for Child Custody. Plaintiff and Defendant reached an agreement regarding custody of

the children, represented by a Consent Order filed 5 December 2006. The Consent Order affirmed that both parties "are fit and proper persons for the custodial roles assigned." The Consent Order vested primary physical custody of the two children with the Defendant and secondary physical custody with the Plaintiff. The present case originates from the trial court's 19 January 2010 Order modifying this original custody agreement.

After the divorce, Plaintiff married Lauren Ashley Dupree, with whom he now shares a son. Defendant married Billy Colville on 2 July 2005 and separated from Mr. Colville on 2 January 2009. At the time of the trial, Defendant was not yet divorced from Mr. Colville and was not eligible for divorce until January 2010. Defendant previously owned a home but lost the home due to foreclosure in February 2009. For the next several months, Defendant and the children lived in a rented residence in Harnett County. In August or early September 2009, Defendant and the children moved to Durham to live with her fiancé, Jason Ledbetter. Defendant informed Plaintiff of her intention to move to Durham prior to the actual move. She described it as a temporary move, and told Plaintiff she intended to ultimately move back to the Holly Springs/Fuquay-Varina area in Harnett County. Defendant and her children moved to Mr. Ledbetter's home because of its larger square footage, which permits each child to have her own bedroom. Plaintiff objected to Defendant's move to Durham, arguing that the long travel time to and from the children's school would not be good for the children. At the time of appeal, Defendant still lived with Mr. Ledbetter at his home in Durham. Mr. Ledbetter made a formal offer to purchase a house in Fuquay-Varina, located approximately 30 minutes from the children's school. Both the Defendant and Mr. Ledbetter acknowledged at trial that they chose a home in Fuquay-Varina rather than a home closer to the children's school because the location was more convenient for Mr. Ledbetter's work. At the time of the trial, Mr. Ledbetter had not yet purchased this house, but the closing was set for 22 December 2009.

Plaintiff lives in Harnett County and works at Coats-Erwin Middle School as a physical education teacher, athletic director, and coach of the basketball and baseball teams. Plaintiff's wife owns her own hair salon business. He and his wife both have family in Harnett County. At the time of the trial, Defendant was unemployed.

Since the Custody Order, Plaintiff has regularly exercised his visitation rights and exercised visitation outside of the court-ordered times, upon agreement with Defendant. According to their teachers,

both children are well-adjusted and perform well in school. The children have always attended Harnett County schools. Although they have an extensive record of tardiness and absences from school, they still receive high grades.

On 17 September 2009, Plaintiff filed a Motion to Modify Custody. In his Motion, Plaintiff alleged that there has been "[a] substantial change in circumstances" since the entry of the Consent Order. Plaintiff cited, among other things, that Defendant sought to "undermine [him] and alienate [him] from his minor children" and has shown "extreme hostility toward [him] and his present wife . . . in the presence of the minor children." Plaintiff further alleged that Defendant routinely used visitation with the children as leverage, put the children in the middle of arguments between Plaintiff and Defendant, and sought to undermine the relationship of Plaintiff and Plaintiff's wife with his children. A hearing on Plaintiff's Motion was held in Harnett County Domestic Relations Court. On 19 January 2010 the trial court entered an Order granting Plaintiff's request for a change of custody.

The trial court's findings of fact describe Defendant's ongoing course of conduct of hostility towards Plaintiff, which has been detrimental to the children's emotional well-being.

This course of conduct was demonstrated by numerous text messages, emails and MySpace postings made by the Defendant to and about the Plaintiff and his current wife, which were derogatory, demeaning and profane. All of these writings were introduced into evidence and are incorporated by reference as if fully set forth herein in support of the findings contained within this Order.

[] The Court reviewed the aforementioned documentary evidence, which indicated the Defendant's failure to give consideration to the Plaintiff's input on decisions about the minor children, which affected their overall welfare.

The Order contained extensive illustrations of Defendant's "extreme hostility," which are described in detail below.

Based on its findings, the trial court concluded there was a substantial chance in circumstances that had impacted the welfare of the children and necessitated a modification of the 5 December 2006 Custody Order. Accordingly, the trial court determined it was in the best interest of the children to award primary physical custody of the children to the Plaintiff and secondary physical custody of the children to the Defendant. Defendant timely entered notice of appeal.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction to hear the instant appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2009). "When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citing *Pulliam v. Smith*, 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Additionally, if the trial court's findings of fact are supported by substantial evidence, the Court of Appeals must determine whether the facts support the conclusions of law. *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254 (citing *Pulliam*, 348 N.C. at 628, 501 S.E.2d at 904). The trial court is vested with broad discretion in child custody matters. *Id.* at 474, 586 S.E.2d at 253 (citing *Pulliam*, 348 N.C. at 624, 501 S.E.2d at 902). The trial court's conclusions of law receive *de novo* review. *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000).

## III. Analysis

On appeal, Defendant contends that the trial court erred in granting the Motion to Modify Custody. Specifically, Defendant argues there was no change in circumstances affecting the welfare of the children. Additionally, Defendant argues that a modification of the original custody order is not in the best interest of the children. We disagree.

In granting the Motion to Modify Custody, the trial court must have first appropriately concluded that there was a substantial change in circumstances and that the change affected the welfare of the minor child or children. N.C. Gen. Stat. § 50-13.7 (2009); *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. It must then determine whether a modification of custody is within the best interests of the children. *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. If we find substantial evidence supports these conclusions, we must affirm the trial court's decision to modify an existing custody agreement absent a finding the trial court's order was the product of a "manifest abuse of discretion." *Metz v. Metz*, 138 N.C. App. 538, 541, 530 S.E.2d 79, 81 (2000).

STEPHENS v. STEPHENS

[213 N.C. App. 495 (2011)]

## A. Substantial Change in Circumstances

[1] First, Defendant argues there is insufficient evidence showing a substantial change in circumstances that affected the welfare of her two children. We do not agree.

When a trial court modifies a custody order, the requisite change in circumstances cannot be "inconsequential" or "minor," but rather must significantly affect the welfare of the children. *Pulliam*, 348 N.C. at 630, 501 S.E.2d at 905 (Orr, J., concurring). "By this, we mean that the changes are of the type which normally or usually affect a child's well-being—not a change that either does not affect the child or only tangentially affects the child's welfare." *Id.* The trial court need not determine whether the effects of the substantial change in circumstances were adverse or beneficial, "but only that the substantial change affects the welfare of the child." *Id.* at 630, 501 S.E.2d at 906.

Unless the effect of the change on the children is "self-evident," the trial court must find sufficient evidence of a nexus between the change in circumstances and the welfare of the children. *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255-56. The moving party maintains the burden of proving a substantial change in circumstances exists that affects the welfare of the children. *Tucker v. Tucker*, 288 N.C. 81, 87, 216 S.E.2d 1, 5 (1975).

A substantial change in circumstances that affects the welfare of the children can occur when a parent demonstrates anger and hostility in front of the children and attempts to frustrate the relationship between the children and the other parent. *Correll v. Allen*, 94 N.C. App. 464, 471, 380 S.E.2d 580, 585 (1989). Additionally, although interference alone is not enough to merit a change in the custody order, "where 'interference [with visitation] becomes so pervasive as to harm the child's close relationship with the noncustodial parent,' " it may warrant a change in custody. *Shipman*, 357 N.C. at 479, 586 S.E.2d at 256 (quoting *Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986)) (alteration in original).

In the present case, as noted in finding of fact 7, the evidence displays "a substantial change in circumstances that [has] impacted the welfare of the minor children in such a manner that makes it appropriate for the Court to modify the previous Custody Order in this matter." The trial court described in finding of fact 7(a) that "Defendant has engaged in a course of conduct that demonstrates hostility towards the Plaintiff that has occurred in front of the minor children and is

otherwise detrimental for the minor children to know about as it relates to their ability to remain emotionally secure and bonded to both parties." Since the entry of the original custody order, the record is replete with evidence that Defendant repeatedly sought to "deliberately [] belittle the [father] in the mind of his child," *Woncik*, 82 N.C. App. at 249, 346 S.E.2d at 280, and commonly interfered with Plaintiff's visitation. In fact, substantial evidence supports the trial court's finding that "[t]he conduct engaged by the Defendant towards the Plaintiff and his present wife threatens to undermine and alienate the Plaintiff as well as the Plaintiff's [sic] wife from the minor children without justification or provocation." Several examples illustrate the nature of Defendant's ongoing hostile conduct.

For instance, the trial court's finding of fact 6(e) and (f) describe how on 7 May 2007, Plaintiff called the police after Defendant appeared at his residence and initiated a verbal altercation. Plaintiff testified that when the police officer, Officer Morris, arrived, Defendant had already left the scene, but was talking to Plaintiff on the telephone. Officer Morris testified that while on the phone Defendant accused Plaintiff's wife of sexually abusing the children. The police report describes that Officer Morris "was left with the clear impression that the suspect [Defendant] was making false allegations about the abuse because of the victim's relationship with Lauren Dupree." Officer Morris notified a detective of the accusation, and told Defendant to come to the police station to make a formal report of the alleged abuse, but Defendant refused to do so. Defendant testified that she informed Officer Morris that she might report her allegation to the sheriff's office rather than the local police department; nevertheless, she never made any such report. Officer Morris also testified that when "the adult or guardian of a victim . . . just, all of a sudden, changes their mind and says, 'No, we're not going to pursue this,' and it's in the heat of the moment kind of thing, it tends to lead me to believe . . . that [the] allegation didn't exist to start with." Following her accusations, Defendant texted Plaintiff a message stating, "Hee hee hee! U r a f[---]n idiot!" Additionally, Officer Morris testified that he heard Defendant tell the children that they could no longer visit Plaintiff's house because it was not their home. At trial, Defendant acknowledged the facts of the incident but denied making an accusation of sexual abuse, despite Officer Morris' testimony to the contrary.

In finding of fact 6(k), the trial court describes how in July 2007, Defendant "openly and publicly berated both the Plaintiff and his current wife and used profanity" at a Harnett Regional Theater

Production involving one of the children. Plaintiff's wife testified that Defendant verbally accosted and cursed at her and Plaintiff in front of a crowd of people. Despite this harassment at his child's play, the trial court found "[n]either the Plaintiff nor his present wife responded to the Defendant but instead entered the theater to watch the minor child in her performance."

The trial court's finding of fact 6(r) describes how on 2 September 2007, after his visitation with his children, Plaintiff and his wife returned the children to Defendant's residence. Plaintiff testified that his wife remained in the car, while Plaintiff walked the children to Defendant's house. Defendant, in the presence of the children, confronted Plaintiff's wife, called her a "whore," and threatened to call the police if Plaintiff ever brought her on Defendant's property again. Plaintiff described a similar event on 5 September 2007, where after another visitation, Plaintiff returned the children to Defendant's home. Although Plaintiff's wife remained in the car parked on the public street, Defendant—again in the presence of the children— yelled obscenities at Plaintiff's wife and attempted to enter the car.

In finding of fact 6(h), the trial court describes an instance where in April 2008, Plaintiff began planning a vacation with his daughters to Disney World and asked Defendant if he could take the children on this trip. After learning of Plaintiff's vacation plans, Defendant took the children to Disney World a month before Plaintiff's scheduled trip. Upon her return, Defendant posted a message on her MySpace page that read "I TOOK THE GIRLS TO DISNEY WORLD . . . FIRST!!!" After Defendant's trip with the children, she texted the Plaintiff: "Careful . . . girls don't give a damn about going to disney, & I certainly dont owe you any favors!"

Plaintiff also testified that in May 2008, Defendant informed one of the children that Plaintiff's wife was pregnant. This was not true, and as a result Plaintiff had to explain the situation to his daughter when she inquired about the issue. Furthermore, Plaintiff described at trial how at the end of the summer of 2008, Defendant initiated an argument with Plaintiff in front of the children. In this instance, Defendant had allowed Plaintiff extra visitation time with the children. Defendant, during the visitation, informed Plaintiff that she wanted to pick up the children a day early to visit their grandmother. Upon hearing this, one child wanted to stay with Plaintiff rather than leave with Defendant. Plaintiff informed the child prior to Defendant's arrival that while she was always welcome at Plaintiff's house, she had to follow the decisions regarding visitation made by

Plaintiff and Defendant. When Defendant arrived, she initiated an argument with Plaintiff in front of the children when the one child expressed that she wanted to stay with Plaintiff. Both children witnessed portions of the argument, and at least one child began to cry.

As described in finding of fact 6(v), Defendant's move to Durham from Harnett County also constitutes a substantial change in circumstances that affects the welfare of her children. Generally, North Carolina case law has held that although a change in residence is not a *per se* substantial change in circumstances justifying modification of a custody order, "[i]f . . . the relocation is detrimental to the child's welfare, the change in residence of the custodial parent is a substantial change in circumstances and supports a modification of custody." *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 79, 418 S.E.2d 675, 679 (1992), *overruled on other grounds*, *Pulliam*, 348 N.C. at 620, 501 S.E.2d at 900. In the present case, the trial court's finding of fact 6(x) notes that the children, who formerly lived nearby their school, now faced a fifty mile (one hour) drive each way to school every day. The trial court also found that although Defendant and Plaintiff had previously agreed to allow Plaintiff extra visitation with his children on some weeks, Defendant ended this extra visitation after her move to Durham. Plaintiff testified that he did not feel the long daily commute was beneficial for the children. Aside from the commute to and from school, the children would also face the same commute for extra-curricular activities in which they participate, including dance and cheerleading.

We conclude these events provide substantial evidence to support the trial court's determination that Defendant's actions have interfered with Plaintiff's visitation of his children and frustrated their relationship. In doing so, Defendant has demonstrated a "disregard for the best interests of the child[ren], warranting a change in custody." *Shipman*, 357 N.C. at 479, 586 S.E.2d at 256 (quoting *Woncik*, 82 N.C. App. at 248, 346 S.E.2d at 279).

Defendant counters this evidence by arguing that both children are well-adjusted and the conduct described by the trial court is no longer an "ongoing . . . course of conduct." Defendant notes the trial court made no findings of emotional or behavior problems with the children. In fact, the trial court noted in finding of fact 6(ww)–6(yy) that the children have loving relationships with their parents and their parents' significant others and are also performing well in school. Nevertheless, the trial court "need not wait for any adverse effects on the child to manifest themselves before the court can alter

custody." *Dreyer v. Smith*, 163 N.C. App. 155, 158, 592 S.E.2d 594, 596 (2004) (quoting *Evans v. Evans*, 138 N.C. App. 135, 140, 530 S.E.2d 576, 579 (2000)). "It is neither 'necessary nor desirable to wait until the child is actually harmed to make a change' in custody." *Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d, at 679 (quoting *Domingues v. Johnson*, 323 Md. 486, 500, 593 A.2d 1133, 1139 (1991)). In the present case, even if the children have not yet been actually harmed by Defendant's actions, the Court need not wait until the substantial change in circumstances causes such harm. The trial court thus did not err in determining that there was a substantial change in circumstances that affects the children.

## B. Best Interest of the Children

[2] Defendant next argues that a modification of the previous custody order is not in the best interest of her children. We disagree.

"As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." *Metz*, 138 N.C. App. at 541, 530 S.E.2d at 81. Under an abuse of discretion standard, we must "determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Mark Group Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 (2002). In the present case, Defendant has neither argued nor presented evidence that the trial court abused its discretion.

In determining the best interest of the children, neither party bears the burden of proof. *Pulliam*, 348 N.C. at 631, 501 S.E.2d at 906 (Orr, J., concurring) (citing *Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d at 679). Rather, "any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court." *Id.* Indeed, "[t]he 'best interest' question is thus more inquisitorial in nature than adversarial," *Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d at 679, and a lack of specificity of facts underlying the trial court's decision could necessitate a reversal of the modification order. *Shipman*, 357 N.C. at 481, 586 S.E.2d at 257. As previously discussed, "trial courts are vested with broad discretion in child custody matters." *Id.* at 474, 586 S.E.2d at 253 (citing *Pulliam*, 348 N.C. at 624, 501 S.E.2d at 903).

As described in finding of fact 8 of the present case, substantial evidence demonstrates that "it is in the best interest of the minor children that their primary care, custody and control be awarded to the Plaintiff with secondary care, custody and control being vested with

the Defendant." At trial, testimony was presented that Defendant has faced periods of depression where she did not properly take care of the children. Defendant's ex-husband, Mr. Colville, testified that Defendant would sleep for extensive periods of time and sometimes neglected to feed the children.

As described in the trial court's finding of fact 6(hh), "Defendant would often times fail to take one child to school of the other child was sick." As Plaintiff testified, this resulted in a significant number of absences from school for both children.

Additionally, Mr. Colville testified that Defendant routinely skipped work and seldom reported her own absences to her work, reflecting a lack of stability that is not in the best interest of the children. The trial court noted in finding of fact 6(ii) that "Defendant was allowed to resign from her employment from Coats/Erwin Elementary School in light of the fact that she had, on occasion, failed to appear for work without notice or phone call to the school to justify her absences and that she was absent in excess of thirty (30) days of her employment during the 2008/2009 school year." Defendant's supervisor, Principal Howard, testified at trial that Defendant's excessive unreported absences directly contributed to her resignation from Coats/Erwin Elementary School. Specifically, Principal Howard mentioned that between the beginning of 2008 and 3 April 2008, Defendant missed 45-and-a-half days of work, including three-and-a-half consecutive weeks between March and April of 2008 which led to her resignation. The trial court's finding of fact 6(oo), supported by trial testimony, notes that at the time of the trial, Defendant was unemployed and not seeking employment.

Furthermore, Defendant's numerous instances of vulgar communication and hostile interactions with Plaintiff in front of their children, described *supra*, directly reflect on Defendant's emotional instability and volatility. Given the trial court's "broad discretion in child custody matters," *Shipman*, 357 N.C. at 474, 586 S.E.2d at 253, we find this evidence to be "competent and relevant to a showing of the best interest" of these children. *Pulliam*, 348 N.C. at 631, 501 S.E.2d at 906 (Orr, J., concurring) (quoting *In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984)).

Plaintiff, on the other hand, has moved into a new home where the children have friends in the local neighborhood. As described in trial court's findings of fact 6(uu), (vv), (ww) and (ccc) both Plaintiff and his wife have family in the area who help take care of the children,

**STEPHENS v. STEPHENS**

[213 N.C. App. 495 (2011)]

and the children generally have a strong loving relationship with Plaintiff, his wife, and their half-brother. At trial, Plaintiff's wife testified that her parents, sister, aunts, uncles, and Plaintiff's mother live nearby and take a role in helping to take care of Plaintiff's children.

The trial court's findings of fact 6(pp) through (rr) note that Plaintiff has maintained a job with the Harnett County School System throughout the duration of these proceedings and has, since the entry of the original Custody Order, obtained his Masters in School Administration. Plaintiff testified that he has maintained steady employment throughout the custody proceedings and has taken steps to advance his career. Additionally, neither "Plaintiff nor his present wife have any plans to relocate themselves away from the Harnett County area and have no plans to remove the children from the Coats School District where they have consistently attended." We conclude there was substantial evidence to support the trial court's conclusion that a modification of the previous custody order was in the best interest of the children.

## IV. Conclusion

We conclude there was substantial evidence before the trial court to support its conclusion that there was a substantial change in circumstances that affected the welfare of the children. We also conclude the trial court did not abuse its discretion in concluding that a modification of the original custody order was in the children's best interest. Accordingly, we affirm the trial court's Order.

Affirmed.

Judges CALABRIA and STROUD concur.