IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-283

Filed 17 December 2024

Guilford County, Nos. 19 JA 280–82

IN THE MATTER OF: H.G., S.G. & E.G.

Appeal by respondent-father from orders entered 27 October 2023 by Judge Angela C. Foster in District Court, Guilford County. Heard in the Court of Appeals 6 November 2024.

> *Robert W. Ewing, for respondent-appellant father.*
>
> *Administrative Office of the Courts, Guardian Ad Litem Program Division, by Michelle FormyDuval Lynch, for guardian ad litem.*
>
> *Mercedes O. Chut, for petitioner-appellee Guilford County Department of Health and Human Services.*

ARROWOOD, Judge.

Respondent-father appeals from orders on adjudication and disposition filed 27 October 2023 continuing custody of his daughter, H.G.[1], with the Guilford County Department of Health and Human Services ("DHHS"), suspending visitation between respondent-father and H.G., and relieving DHHS of the obligation to make further

---

[1] Initials are used for all minors to protect their identities.

reunification efforts between respondent-father and H.G.  For the following reasons, we affirm the district court's orders.

## I. Factual Background

On 27 March 2019, the trial court filed petitions for nonsecure custody of three adopted children of respondent-father: H.G., then aged 9, S.G., then aged 14, and E.G., then aged 15.[2]  In an exhibit attached to the juvenile petition, DHHS noted a report from both S.G. and E.G. stating that they had had been verbally and physically abused by their father, all of which respondent-father denied.  There was also report of respondent-father's nephew inappropriately touching S.G. and E.G.  During a forensic interview, H.G. said that she had witnessed respondent-father's abuse but had not been abused herself.  All three children were placed in a children's home and continued to attend school.

The trial court entered an adjudication and disposition order on 26 June 2019 finding that E.G. and S.G. were abused, neglected, and dependent, and that H.G. was neglected and dependent.  The trial court ordered custody for the juveniles to remain with DHHS, visitation to remain suspended with "no contact under any circumstances, pending further orders of the Court[,]" and that DHHS "shall cease

---

[2] Respondent-father adopted this children on 26 June 2012 as a single parent adoption, when the children were aged 2, 7, and 8, respectively.

further reunification efforts with [respondent-father] at this time." Respondent appealed the order on 25 July 2019.

While the appeal was pending, the trial court conducted a permanency planning hearing on 18 September 2019, finding that the primary plan should be reunification with a secondary plan of adoption, and continuing custody with DHHS. The court conducted a visitation review hearing on 13 December 2019; there, the court made findings of fact that included allegations H.G. made concerning respondent-father. H.G. told a social worker that respondent showered with her and touched her "private area." Neither S.G. nor E.G. wished to have visitation with respondent. Custody of the children remained with DHHS and respondent-father was not granted any visitation.

Respondent's appeal was heard by this Court on 10 June 2020. *In re H.A.G.*, __ N.C. App. __ 2020 WL 3721834 (unpublished). We found that the trial court erred by admitting testimony from the supervisor of Spencer Brooks, a social worker with DHHS. *Id.* at *1, 4. The supervisor was the only individual who testified at the adjudicatory hearing, and she testified to the out-of-court statements made by the juveniles to Brooks. *Id.* at *4, 5. We determined that the statements did not fall into any exception to the hearsay rule, and prejudiced respondent-father. *Id.* at *5. We accordingly reversed the trial court's adjudication and disposition, *id.*, and the trial court dismissed the juvenile petitions and dissolved the nonsecure custody order as of 27 July 2020.

The next day, 28 July 2020, DHHS took out new juvenile petitions for S.G., E.G., and H.G. alleging they were abused, neglected, and dependent. An attached exhibit described an interview with H.G. conducted 8 July 2020 regarding possible sexual abuse by respondent-father where she stated "she slept in the same [bed] as [respondent-father] . . . with a night gown and no underwear[,]" which "made her feel uncomfortable[,]" but that she did so "because there was no more room for [her] to sleep in." The exhibit also summarized interviews with E.G. and S.G. where they described further abuse by respondent-father, including that respondent-father "slept and showered with [H.G.] from a young age up until they were removed from his care[,]" and "put an ointment on [H.G.]'s vagina until she was at least 9 years old although she was capable of doing this herself[,]" as well as abused by respondent-father's nephew who allegedly touched E.G. and S.G.'s private areas on multiple occasions. The trial court entered orders for nonsecure custody returning custody of the juveniles to DHHS that same day.

At an adjudication hearing on 15 September 2021, all three children were found to be abused, neglected, and dependent. The trial court made findings summarizing the allegations from the new petitions and attached exhibits, including H.G.'s description of sleeping in respondent-father's bed, showering with him, and respondent's touching of her "private areas[,]" as well as E.G. and S.G.'s statements that respondent-father's nephew sexually assaulted them when they were 14 and 12 years old respectively and respondent-father's nephew was 28 years old.

Following the adjudication, DHHS moved for bifurcation of the disposition hearings. DHHS stated that respondent-father agreed it was in the best interest of the S.G. and E.G. to remain in foster care; both children expressed no desire for reunification and stated that they would run away if they were returned to respondent-father, and E.G. would soon reach the age of majority. However, respondent-father sought reunification and to regain custody of H.G., who was 12 years old at the time of the motion and according to DHHS had a "drastically different" proposed plan from the other two juveniles. E.G. reached the age of majority on 5 December 2021, and DHHS was relieved of her custody. The court granted a bifurcation of the trials on 5 January 2022.

Following H.G.'s disposition hearing on 30 March 2022, the trial court entered a disposition order summarizing H.G.'s placement status and CPS history. The trial court found that respondent-father had entered into a case plan with DHHS on 24 March 2022, requiring him to maintain safe and appropriate housing, maintain income to provide for himself and his children, and participate in parenting assessment training and education, a mental health assessment, and a substance abuse evaluation. The trial court further found that "due to the evidence presented of sex abuse, reunification is not a viable plan for this juvenile." Accordingly, the trial court continued custody of H.G. with DHHS, relieved DHHS of the obligation to make further reasonable efforts towards reunification, and found that the plan of reunification was not in the best interest of the juvenile. At this hearing, respondent-

father's counsel stated that she disagreed with ceasing reunification efforts, given that she had not had notice that this would be decided at the disposition; she understood "statutorily" DHHS's arguments, but believed "that's something that should have been discussed in advance at a team meeting." Defendant appealed this order 15 July 2022.

Respondent-father's second appeal in this matter was heard by this Court on 28 August 2023; we vacated the district court's order and remanded to allow the district court to make the necessary findings of fact. *In re H.A.G.*, __ N.C. App. __ 2023 WL 6119972 at *5. We determined that the findings of fact challenged by respondent-father "merely display[ed] the conflicts of evidence." *Id.* The trial court found that all the witnesses were credible and reliable—including respondent, who denied the worst allegations—so we were therefore "unable to determine how the trial court came to its ultimate findings of fact regarding abuse." *Id.* However, we determined that reversal was not necessary, and instead remanded for the trial court to make the appropriate findings of fact, permitting the trial court to "hold an additional hearing on evidentiary matters." *Id.*

On 10 and 11 October 2023, the trial court conducted a hearing on remand to discuss the procedural posture of the case. The trial court subsequently entered new adjudication and disposition orders again concluding that H.G. would remain in the custody of DHHS, there would be no visitation between respondent-father and H.G.,

and that reunification efforts could cease. Respondent-father gave notice of appeal 20 November 2023.

## II. Discussion

Respondent-father's sole issue on appeal is whether the trial court abused its discretion at the dispositional phase of the case by eliminating reunification as the permanent plan, arguing the trial court lacked statutory authority and failed to give respondent-father appropriate notice. For the following reasons, we find no abuse of discretion.

## A. Failure to Appeal

The events that gave rise to this appeal initially occurred at the 30 March 2022 disposition hearing. In its disposition order, the court found that reunification was not a viable plan for H.G. due to respondent's sexual abuse. The trial court also relieved DHHS of any obligation to make further reunification efforts. Respondent-father's trial counsel noted her disagreement with ceasing reunification efforts, stating, "I don't believe I had notice of that at a prior meeting, so we didn't really discuss that at a meeting." The decision to eliminate reunification at the disposition and the lack of notice serve as the bases for respondent's appeal, which he argues is a violation of N.C.G.S. § 7B-901.

However, we note that respondent had an opportunity to appeal the failure to give notice and elimination of reunification in his 15 July 2022 appeal, but apparently chose not to do so. Rather, he appealed only the "trial court's adjudicatory findings

of fact and conclusions." *In re H.G.*, __ N.C. App. __, 2023 WL 6119972 at *2. We dismissed a respondent's constitutional challenge of a statute in *In re Estate of Lunsford*, 160 N.C. App. 125 (2003) (*rev'd on other grounds*, 359 N.C. 382 (2005)), where he made that argument for the first time in his second appeal. *Lunsford*, 160 N.C. App. at 129 n.1. Relying on *Lunsford*¸ we later held that "[w]hen a party fails to appeal a ruling on a particular issue, he is then bound by that failure and may not revisit the issue in subsequent litigation." *Hill v. Hill*, 181 N.C. App. 69, 76–77 (2007).

In the case *sub judice*, respondent-father failed, in his 2022 appeal, to appeal the issues he now challenges. Had he chosen to make a more comprehensive appeal in 2022, this case would have concluded with our ruling in 2023 and provided H.G. a finality in this custody dispute she has not yet been afforded. However, because the issues asserted were unchallenged from the prior order, we find that this constitutes waiver and respondent-father has no right to appeal the lack of notice and elimination of reunification.

## B. Disposition Hearing

Assuming, *arguendo*, that respondent's appeal is properly before the court, we address respondent's arguments that elimination of reunification was not authorized by statute, and that respondent failed to receive proper notice.

"The trial court's dispositional choices—including the decision to eliminate reunification from the permanent plan—are reviewed for abuse of discretion." *In re*

*A.P.W.*, 378 N.C. 405, 410 (2021) (citation omitted). "Under an abuse of discretion standard, we must determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Stephens v. Stephens*, 213 N.C. App. 495, 503 (quotation marks and citation omitted).

We recently addressed the competency of a court to eliminate reunification as a permanent plan in *In re R.G.*, 292 N.C. App. 572 (2024). There, a mother had appealed a permanency planning order ("PPO") on the grounds that this order had eliminated reunification as part of the plan, a decision she was statutorily authorized to appeal. *Id.* at 577. We held to the contrary:

> Mother did not have a right to appeal the Initial PPO pursuant to N.C.G.S. § 7B-1001(a)(5), because N.C.G.S. § 7B-906.2(b) operates to exclude reunification as a permanent plan once the trial court makes findings of aggravated factors under N.C.G.S. § 7B-901(c) at disposition. There is no required delay between the trial court's dispositional order and first permanency planning order for the court to eliminate reunification from the permanent plans for a juvenile after the trial court makes dispositional findings of the specific, statutorily prescribed circumstances under N.C.G.S. § 7B-901(c).

*Id.*

Here, respondent-father states that § 7B-901(d) "does not permit the trial court to eliminate reunification as a permanent plan for a juvenile when it determines that reunification efforts are not required at the initial disposition hearing." Respondent-father's contention, however, is flatly contradicted by our holding in *In re R.G.* that expressly permits this mechanism.

- 9 -

Our holding also serves to answer respondent-father's contention that he was not given proper notice of the permanency planning hearing that would be occurring as part of the disposition. While we agree that N.C.G.S. § 7B-901(d) requires notice be given before conducting a permanency planning hearing, our holding in *In re R.G.*, as well as the relevant statute, contradict respondent's characterization that H.G.'s disposition hearing was a permanency planning hearing. "The plain language of N.C.G.S. § 7B-906.2(b) now permits trial courts to exclude reunification from the permanent plans for a juvenile at any time, including immediately following disposition, and need not be a permanent plan for a juvenile, at all, if findings were made under N.C.G.S. § 7B-901(c)." *In re R.G.*, 292 N.C. App. at 579. N.C.G.S. § 7B-906.2 provides six permanent plan that the court "shall adopt" at "any permanency planning hearing": reunification, adoption, guardianship, custody, Another Planned Permanent Living Arrangement, or reinstatement of parental rights. N.C.G.S. § 7B-906.2. Thus, while the decision to eliminate reunification will ultimately affect the resultant PPO, that decision does not turn a disposition into a permanency planning hearing, since a hearing requires the establishment of a plan, not merely the elimination of one option, which may be done at any time.

We note that even respondent's counsel at trial admitted there was no statutory basis for requiring notice: "I understand that statutorily they didn't need to. It's just something that we do typically discuss in advance say at a team meeting."

Custom is not a substitute for statutory compliance . We find that the court did not abuse its discretion in eliminating reunification and declining to provide notice.

## C.     Trial Court's Denial of New Hearing

Finally, respondent-father appears to take issue with the trial court's decision to draft an order based on the transcript from the 2022 hearing, rather than conduct a new hearing and receive new evidence.  Respondent notes that he "was not given the opportunity to present evidence concerning the permanent plan for Heather based on the current circumstances."  In our 2023 opinion remanding this matter to the trial court, we left it to the discretion of the trial court to "hold an additional hearing on evidentiary matters." *In re H.A.G.*, __ N.C. App. __ 2023 WL 6119972 at *5.  Further, the evidence that respondent would have brought before the court could not have changed the court's finding that respondent had sexually abused H.G., which was the sole basis for its elimination of reunification.[3]  We note that N.C.G.S § 7B-901(c) does not require the trial court to abandon reunification efforts, even after a finding of aggravated circumstances, if the court "concludes that there is compelling evidence warranting continued reunification efforts . . . ."  N.C.G.S § 7B-901(c).  However, it is clear that the court was satisfied that the evidence presented at the 2022 disposition hearing provided proper grounds for the elimination of reunification efforts, given

---

[3] Respondent's brief lists actions that respondent has taken since the 2020 custody action, including a Parenting Assessment Training and Education pre-test, a Parenting Psycho-Sexual Evaluation, mental health assessment, and participation in shared parenting with H.G.'s placement provider.

that it declined the optional, additional hearing, and we do not find the trial court abused its discretion in so deciding.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the order of the trial court.

AFFIRMED.

Judges COLLINS and HAMPSON concur.