IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-951

Filed 4 June 2025

Wake County, No. 23JT002314-910

IN THE MATTER OF: B.B.A.

Appeal by Petitioner from Order entered 15 July 2024 by Judge Ashleigh S. Parker in Wake County District Court. Heard in the Court of Appeals 22 April 2025.

*Heyward Wall Law, P.A., by Heyward G. Wall, for Petitioner-Appellant.*

*Parent Defender Wendy C. Sotolongo, by Deputy Parent Defender Annick Lenoir-Peek, for Respondent-Appellee Father.*

*No brief filed for Guardian ad litem.*

HAMPSON, Judge.

**Factual and Procedural Background**

Amazing Grace Adoptions (Petitioner) appeals from an Order denying its Petition for Termination of Respondent-Father's parental rights to B.B.A.[1] The Record before us tends to reflect the following:

Respondent-Father and Respondent-Mother began a relationship together in 2022.[2] At that time, Respondent-Father and Respondent-Mother both lived in

---

[1] The parties did not agree on a pseudonym for the minor child.
[2] Respondent-Mother is not a party to this appeal.

California. Respondent-Mother later joined the military; Respondent-Father remained in California. Respondent-Mother learned she was pregnant in January or February 2023, while she was at a military "schoolhouse" in Florida. Respondent-Mother informed Respondent-Father of her pregnancy and initially indicated she was considering an abortion. Later, Respondent-Mother told Respondent-Father she wanted to give the child up for adoption. Respondent-Father opposed putting the child up for adoption, instead desiring to raise the child himself.

Respondent-Father offered to support Respondent-Mother and expressed a desire to be at the hospital when the baby was born. Respondent-Father inquired about the baby's due date and gender, but Respondent-Mother would not give him the information—outside of an "estimate" the child would be born in July or August. In March 2023, Respondent-Mother gave Respondent-Father Petitioner's contact information—the adoption agency she was working with, located in Raleigh, North Carolina. Soon after, Respondent-Mother began ignoring Respondent-Father's attempts to contact her.

On or about 9 March 2023, Respondent-Father contacted Petitioner and spoke with Respondent-Mother's pregnancy counselor. Respondent-Mother had informed the counselor Respondent-Father was the child's biological father, but the counselor refused to give Respondent-Father any information because she was "bound by confidentiality." Respondent-Father was adamant he did not want the child to be adopted, and the pregnancy counselor told him he would "have to get an attorney[.]"

Respondent-Father traveled to Raleigh, where he remained for approximately the next seven months, to continue his efforts to obtain custody of the unborn baby. On 1 May 2023, Respondent-Father went to Petitioner's office, waited outside, and called about speaking in person to someone about the baby. Petitioner's staff indicated they were "busy" and there was no one who could help Respondent-Father. The following day, Respondent-Father returned to Petitioner's office but was told the staff "were in meetings all day" and there was no one available to talk to him. While Respondent-Father was waiting outside, Petitioner's director called him and threatened to "call the cops" on him.

After Petitioner continued to refuse to provide Respondent-Father with information, Respondent-Father hired a lawyer. Respondent-Father's counsel was also unsuccessful in obtaining information from Petitioner. Respondent-Father's counsel was told it was not possible to file a paternity action or request custody of the child until after the child was born.

When the baby was born on 30 June 2023, Respondent-Mother did not tell Respondent-Father. Respondent-Mother executed a relinquishment of her rights to the minor child the following day, on 1 July 2023. The minor child was placed with an adoptive family on 2 July 2023. That same day, Respondent-Father went to Petitioner's office and spoke to Respondent-Mother's pregnancy counselor, who did not tell him the baby had been born. Respondent-Father spoke to Petitioner's director on 3 July 2023, who also did not tell Respondent-Father the baby had been born.

"[A]lmost a month" later, when Respondent-Father learned about the minor child's birth and placement with an adoptive family, he requested and was denied visitation.

On 3 July 2023, Petitioner filed a Petition for termination of Respondent-Father's parental rights. In the Petition, Petitioner alleged Respondent-Father's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(5), in that Respondent-Father had not legitimated the child or established paternity. The Petition further alleged it was in the minor child's best interest that Respondent-Father's parental rights be terminated because Respondent-Mother believed it was in the child's best interest, the child was less than one month old, the child had no bond with Respondent-Father, the child had bonded with his adoptive parents, and terminating Respondent-Father's parental rights would aid in the successful adoption of the child by his adoptive parents. On 25 October 2023, Respondent-Father filed an Answer and Counterclaim for Paternity, Legitimation, and Temporary and Permanent Child Custody. Results of the subsequent paternity testing confirmed Respondent-Father is the minor child's biological father.

The hearing on the Petition was held on 13 June 2024. At the time of the hearing, Respondent-Father still had not met the minor child. At the hearing, the Guardian ad litem testified he thought Respondent-Father "could accommodate having a child living with him and take care of the child." Respondent-Mother testified she believed the adoptive family would be "better" caretakers, but there was nothing to make her think Respondent-Father would not be a good father.

Respondent-Father testified he had a plan for the child's care and family to support him. Respondent-Father admitted he did not file for legitimation or paternity prior to the filing of the Petition.

On 15 July 2024, the trial court entered an Order concluding grounds existed to terminate Respondent-Father's parental rights under N.C. Gen. Stat. § 7B-1111(a)(5). The trial court further concluded it was not in the best interest of the minor child to terminate Respondent-Father's parental rights, and "it is absolutely in the best interest for the minor child to be in the care, custody, and control of his father and to have the opportunity to bond with his paternal biological family." On 13 August 2024, Petitioner timely filed Notice of Appeal.

## Issue

The issue on appeal is whether the trial court abused its discretion in determining it was not in the juvenile's best interest to terminate Respondent-Father's parental rights.

## Analysis

"A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage." *In re D.R.B.*, 182 N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007). "In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen. Stat. § 7B-1111(a) exists." *Id.*

"If the petitioner meets its burden of proving at least one ground for

termination of parental rights exists under N.C. Gen. Stat. § 7B-1111(a), the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child. The standard of review of the dispositional stage is whether the trial court abused its discretion in terminating parental rights." *In re C.C.*, 173 N.C. App. 375, 380-81, 618 S.E.2d 813, 817 (2005) (citation omitted). " 'Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *In re C.J.H.*, 240 N.C. App. 489, 492-93, 772 S.E.2d 82, 86 (2015) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

"The trial court's dispositional findings of fact are reviewed under a competent evidence standard." *In re K.N.K.*, 374 N.C. 50, 57, 839 S.E.2d 735, 740 (2020) (citations and quotation marks omitted); *see also Stephens v. Stephens*, 213 N.C. App. 495, 503, 715 S.E.2d 168, 174 (2011) ("As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." (citation and quotation marks omitted)). Unchallenged findings of fact are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)).

The parties do not challenge the trial court's determination grounds existed to terminate Respondent-Father's parental rights under N.C. Gen. Stat. § 7B-1111(a)(5). Rather, Petitioner contends the trial court abused its discretion by

declining to terminate those rights.

When determining whether termination of parental rights is in the best interest of a juvenile, N.C. Gen. Stat. § 7B-1110(a) requires the trial court consider:

> (a) After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. . . . In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
>> (1) The age of the juvenile.
>>
>> (2) The likelihood of adoption of the juvenile.
>>
>> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>>
>> (4) The bond between the juvenile and the parent.
>>
>> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>>
>> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2023). "[T]he language of [N.C. Gen. Stat. § 7B-1110(a)] requires the trial court to consider all six of the listed factors, and . . . any failure to do so would constitute an abuse of discretion." *In re D.H.*, 232 N.C. App. 217, 220-21, 753 S.E.2d 732, 735 (2014) (quotation marks omitted). However, "the court must enter written findings in its order concerning only those factors that are relevant." *Id.* (citations and quotation marks omitted).

It is well established that "[a]fter the trial court has determined grounds exist

for termination of parental rights at adjudication, the court is required to issue an order of termination in the dispositional stage, *unless it finds the best interests of the child would be to preserve the parent's rights*." *In re Blackburn,* 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001) (emphasis added) (citation omitted). Here, the trial court concluded it was in the minor child's best interest to uphold Respondent-Father's parental rights:

> 4. That after considering all relevant factors for best interest and weighing them accordingly, it is not in the best interest of the minor child that the parental rights of the Respondent Father . . . be terminated.
>
> 5. That the relevant consideration is that it is absolutely in the best interest for the minor child to be in the care, custody, and control of his father and to have the opportunity to bond with his paternal biological family.

The trial court further concluded "Respondent Father has a paramount constitutional right to the care, custody, and control of his child and has not acted contrary to that right."

In support of its Conclusions, the trial court made the following Findings:

> 20. The Mother sought out the adoption agency despite the request from the Father to allow him to keep the child.
>
> 21. Respondent Father learned of the mother's intent to place the child for adoption when he received a packet from the Adoption Agency and then called and spoke with the Agency. He told the agency as early as April/May 2023 that he did not want his minor child to be adopted.
>
> 22. Respondent Father then flew from Los Angeles, California, to North Carolina several times to try to figure out what was

happening with the adoption agency and how he could prevent the adoption of the minor child from happening.

23. Respondent Father even moved to North Carolina for seven months and hired an attorney to try and stop his child from being adopted.

24. Despite several attempts by Respondent Father and his attorney, the Adoption Agency would not speak with Respondent Father nor his attorney regarding the minor child, per their "policy" and the Agency's duty of confidentiality to pregnant clients. The Adoption Agency also would not speak with Respondent Father because he was hanging around their parking lot, the child had not yet been born, and they did not have any real information to give the Respondent Father. The Adoption Agency even threatened to have him trespassed because he sought answers on how to stop his child from being adopted.

25. The Adoption Agency ignored Respondent Father's and his attorney's requests to establish a bond with the minor child as they refused to let the Respondent father meet and spend time with the minor child.

26. Respondent Father has tried everything he can to create a bond with the minor child, including asking for visitation, but has been thwarted by the Adoption Agency in his attempts to create a bond with the minor child.

27. The Adoption Agency's only reason for denial of his attempts is that it is not in their "policy" to speak to or allow Respondent Father communication or visitation with the minor child.

28. An adoption agency does not have a carte blanche right to terminate a parent's parental rights simply because the child has been placed with a prospective adoptive family.

29. Respondent father was not afforded the opportunity to send the minor child gifts or financial assistance because the Adoption Agency would not accept them.

30. Respondent father has not been afforded an opportunity to

foster the bond [between] a biological parent and child, despite his multiple efforts.

31. Mother stated that there was nothing wrong with Respondent Father and that while he would be a good father to their son, the family that she "chose" for him would give him a better life.

32. Respondent Father has a plan for the minor child and a strong support system of family members who reside with him and would assist him with his child.

33. The Guardian ad Litem said the child would do well in either home and could not make a determination on who would be in the child['s] best interest to remain with.

Petitioner challenges Findings 21, 28, and 29 as unsupported by the evidence.[3] Even assuming, without deciding, each of the challenged Findings is unsupported, the remaining unchallenged Findings are sufficient to support the trial court's Conclusions. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58-59.

The trial court's unchallenged Findings show Respondent-Father desired custody of the minor child before the minor child was born, made continuous efforts to obtain custody of the minor child and prevent the child's adoption, "would be a good father[,]" has a plan of care for the minor child, and has a "strong support system" to help him raise the minor child. The trial court considered—as it was allowed to do—

---

[3] Petitioner also challenges adjudicatory Finding 8. This Finding concerns whether grounds to terminate Respondent-Father's parental rights exist; because the parties do not challenge the trial court's Conclusion as to grounds for termination, Finding 8 is irrelevant to our analysis. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58-59 ("[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." (citation omitted)).

that the reason grounds existed under N.C. Gen. Stat. § 7B-1111(a)(5) for termination of Respondent-Father's parental rights was largely due to circumstances outside Respondent-Father's control. *See Stephens*, 213 N.C. App. at 503, 715 S.E.2d at 174 ("[A]ny evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court . . . [because] trial courts are vested with broad discretion in child custody matters." (quotation marks and citations omitted)). The trial court found Respondent-Father had not acted contrary to his constitutionally protected right to the care, custody, and control of the minor child.[4] Accordingly, the trial court appropriately concluded it would not be in the minor child's best interest to terminate Respondent-Father's parental rights. *See Owenby v. Young*, 357 N.C. 142, 145, 579 S.E.2d 264, 266 (2003) ("[A]bsent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail." (citation omitted)).

Petitioner contends Respondent-Father's right to parent his child is irrelevant to the minor child's best interest and the trial court's Conclusions improperly favor Respondent-Father's interests over those of the minor child. In support of this

---

[4] Although the trial court labeled this determination a Conclusion of Law, it is more properly characterized as a Finding of Fact, and thus we review it as such. *See Walsh v. Jones*, 263 N.C. App. 582, 589, 824 S.E.2d 129, 134 (2019) ("The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review." (citation and alteration omitted)).

assertion, Petitioner cites *In re Blackburn* for the premise that "[i]n all cases where the interests of the child and those of the child's parents or guardians are in conflict, . . . action which is in the best interests of the child should be taken." 142 N.C. App. at 612, 543 S.E.2d at 910 (citation omitted); *see also* N.C. Gen. Stat. § 48-1-100(c) (2023) ("Any conflict between the interests of a minor adoptee and those of an adult shall be resolved in favor of the minor."); *id.* § 7B-1100(3) (2023) ("Action which is in the best interests of the juvenile should be taken in all cases where the interests of the juvenile and those of the juvenile's parents or other persons are in conflict.").

Here, however, there is no evidence Respondent-Father's and the minor child's interests conflict; nor is there evidence indicating allowing Respondent-Father to bond with the minor child is not in the minor child's best interest. Rather, the Record tends to show terminating Respondent-Father's parental rights would be an unnecessary severance of Respondent-Father's relationship with the minor child. *See* N.C. Gen. Stat. § 7B-1100(2) (2023) (recognizing "the need to protect all juveniles from the unnecessary severance of a relationship with biological or legal parents.").

Moreover, we cannot say Respondent-Father's right to the care and custody of the minor child is irrelevant to the minor child's interests. As the Supreme Court of the United States in *Lehr v. Robertson* recognized:

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child

relationship and *make uniquely valuable contributions to the child's development*.

463 U.S. 248, 262, 103 S. Ct. 2985, 2993, 77 L. Ed. 2d 614 (1983) (emphasis added) (footnote omitted); *see also Owenby*, 357 N.C. at 145, 579 S.E.2d at 266 (recognizing the presumption a fit parent will act in the best interest of their child). While upholding parental rights is not always in a juvenile's *best* interest, having a relationship with his or her biological parents is certainly relevant to a juvenile's interests. And here, as the trial court recognized, there was no evidence having a relationship with Respondent-Father would not be in the minor child's best interest.

Petitioner further makes the unsupported assertion the trial court acted on a belief a parent's constitutional right to custody and control of their child is "unbreakable" and "absolute." Nowhere in its Order, nor in the transcript of the hearing, nor anywhere else in the Record does the trial court purport to hold such a belief. To the contrary, the trial court concluded it was not in the minor child's best interest to terminate Respondent-Father's parental rights in part because Respondent-Father had "not acted contrary to" those rights. Thus, the trial court clearly recognized those rights were not absolute.

Lastly, Petitioner argues the trial court's decision means "[e]ven the most disinterested biological fathers could prevent adoptions merely by stating their opposition." This argument is a gross manipulation of the facts at bar. The trial court's unchallenged Findings do not indicate Respondent-Father is a "disinterested"

parent, nor that Respondent-Father merely "announced" he wanted to preserve his parental rights. Quite the opposite, the trial court's Findings show Respondent-Father expressed an active desire to be involved in the minor child's life—before the minor child was born and continuing through the present. Indeed, all evidence tends to show Respondent-Father persistently advocated for his right to parent his child, including moving across the country to try to obtain custody of the minor child.

In light of the ample, competent evidence showing Respondent-Father's unwavering desire to parent his child—and the complete lack of evidence showing a relationship with Respondent-Father would not be in the minor child's best interest— we cannot say the trial court's decision to uphold Respondent-Father's parental rights was unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. *See In re C.J.H.*, 240 N.C. App. at 492-93, 772 S.E.2d at 86. Thus, the trial court properly concluded termination of Respondent-Father's parental rights was not in the minor child's best interest. Therefore, the trial court did not err in denying the Petition.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's Order.


AFFIRMED.

Judges STROUD and TYSON concur.