An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-254

Filed 17 December 2025

Mecklenburg County, No. 23CVD010270-590

JOHN STEWART, Plaintiff,

v.

CAITLYN BOSLEY, Defendant.

Appeal by Plaintiff from order entered 17 October 2024 by Judge Paige B. McThenia in Mecklenburg County District Court. Heard in the Court of Appeals 14 October 2025.

*Myers Law Firm, PLLC, by Matthew R. Myers, for Plaintiff-Appellant.*

*No brief filed for Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff John Stewart ("Father") appeals from the trial court's permanent child custody order. Father argues the trial court's findings of fact were not supported by sufficient evidence, the trial court's conclusions of law were based on inadequate findings of fact, and the trial court abused its discretion. We vacate the trial court's order and remand.

## I.    Factual and Procedural Background

Father and Caitlyn Bosley ("Mother") met via an online dating site. At the time, Father was forty-three years old, living in Charlotte, North Carolina, and Mother was fifteen years old, living in Kentucky. When Mother was sixteen years old, Father visited Mother in Kentucky. During this visit, Mother performed oral sex on Father.

Mother wanted to run away to Charlotte, as she was influenced by her desire to be with Father and fear of her home environment including Mother's mom and prior romantic relationship. Further, Mother showed symptoms of depression and suicidal thoughts then. In an attempt to help Mother, Father drove to Kentucky to get her and brought her back to North Carolina. Mother stayed with Father for about one to two weeks before the police came to get her. Mother and Father engaged in sexual relations during that time period but refrained from intercourse. Father was charged with contributing to delinquency of a minor and kidnapping, but these charges were dismissed and expunged.

Mother returned to Kentucky and the couple temporarily ceased communicating. Some months later, Mother and Father resumed communicating, including sexually explicit communications. The couple planned to marry when Mother was eighteen. Mother wrote her family a note explaining why she was leaving, including family issues and a desire to start fresh, and left for Charlotte. Father and Mother married on 25 August 2020. During the marriage, Father and Mother had one child, Noah. The couple separated on 25 March 2023, and Mother

returned to Kentucky. A few weeks after separating, Mother sought a protective order against Father to prohibit unauthorized contact for six months. Mother and Father are now divorced.

On 19 March 2024, Mecklenburg County's Judge McThenia entered a temporary child custody order, where, after a couple months of shorter rotating stays, Noah alternated between her parents after two consecutive weeks with one parent at a time. Several months later, after the child custody trial, the trial court entered a permanent order granting Mother sole legal and physical custody of Noah and Father two hours of supervised visitation per month in Kentucky, at a location chosen by Mother. Father timely appeals.

## II. Analysis

Trial courts have broad discretion when handling child custody issues. *Durbin v. Durbin*, 388 N.C. 55, 60, 918 S.E.2d 832, 837 (2025) (citation omitted). Since the trial courts have "the opportunity to see the parties, hear the witnesses, and detect nuances innate in live testimony that are absent from the printed record," the trial court's findings are conclusive on appeal if an appellate court concludes there is substantial record evidence to support the trial court's findings of fact, despite contrary record evidence. *See id.* (citation omitted). Substantial evidence is evidence that a reasonable mind may "'accept as adequate to support a conclusion.'" *Stephens v. Stephens*, 213 N.C. App. 495, 498, 715 S.E.2d 168, 171 (2011) (citation omitted).

On appeal, this Court must determine whether a trial court's findings of fact support its conclusions of law. *See id.* (citation omitted)*; Durbin*, 388 N.C. at 60, 918 S.E.2d at 837 (citation omitted). The trial court's conclusions of law are reviewed de novo. *Stephens*, 213 N.C. App. at 498, 715 S.E.2d at 171 (citation omitted). Additionally, if a finding of fact is essentially a conclusion of law, this Court will treat it as a conclusion of law. *In re M.R.D.C.*, 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004) (citation omitted).

A trial court's child custody determination must be guided by the best interests of the child; a child should be placed in the home that will be "'most conducive to the full development of its physical, mental, and moral faculties.'" *Respess v. Respess*, 232 N.C. App. 611, 615, 754 S.E.2d 691, 696 (2014) (citing *Griffith v. Griffith*, 240 N.C. 271, 275, 81 S.E.2d 918, 921 (1954)). **Qu**estions raised by record evidence should be resolved in findings concerning dwellings, incomes, and a "'party's fitness to have care, custody, and control of the child.'" *Dixon v. Dixon,* 67 N.C. App. 73, 78, 312 S.E.2d 669, 672 (1984) (citation omitted); *Matter of Kowalzek*, 37 N.C. App. 364, 369, 246 S.E.2d 45, 48 (1978) (receiving negative treatment on other grounds).

Minor children deserve love and companionship from both of their parents, given that the children's best interests are maintained. *Hinkle v. Hartsell*, 131 N.C. App. 833, 837, 509 S.E.2d 455, 458 (1998) (citation omitted). Generally, a parent has the right to access or visit his or her child. *Id.* Even registered sex offenders may be entitled to visitation with their children. *Bobbit, ex rel. Bobbitt v. Eizenga*, 215 N.C.

App. 378, 381, 715 S.E.2d 613, 615–16 (2011). However, visitorial rights will be subordinate to a child's best interests, and therefore a trial court may deny visitation rights to a noncustodial parent if the visitations are detrimental to a child's best interests or a parent's conduct forfeits the privilege. *Respess,* 232 N.C. App. at 616, 754 S.E.2d at 696; *Hinkle,* 131 N.C. App. at 837, 509 S.E.2d at 458 (citation omitted).

The trial court has great discretionary power over parental visitation rights, as well. *Hinkle*, 131 N.C. App. at 838, 509 S.E.2d at 458 (citation omitted). Still, when denying a parent's visitation rights, a district court trial judge must make a written finding of fact that the parent is unfit to visit the child or that such visitation is not in the best interest of the child. N.C. Gen. Stat. § 50-13.5(i) (2023). "Where visitation is severely restricted, there must be some finding of fact, supported by competent evidence in the record, warranting such restriction." *Evans v. Myers*, 291 N.C. App. 312, 321, 895 S.E.2d 470, 477 (2023) (citation omitted). Supervised visitation limited to one weekend per month may be restrictive. *Johnson v. Johnson*, 45 N.C. App. 644, 647, 263 S.E.2d 822, 824 (1980).

Both the United States and North Carolina Constitutions guarantee the right of persons to freely exercise religion. U.S. Const. art. I; N.C. Const. art. I § 13. Despite a trial court's wide discretion, this discretion may be abused by an extensive religious inquisition that infringes on the right to worship. *Petersen v. Rogers*, 111 N.C. App. 712, 717, 433 S.E.2d 770, 774 (1993), *reversed on other grounds*, 337 N.C. 397, 445 S.E.2d 901 (1994). North Carolina courts "may consider a child's spiritual

welfare as part of the best interests determination," especially when religious practices may be harmful to a child, but "a court may not base its findings on its preference for any religion or particular faith." *Id*. at 718, 433 S.E.2d at 774 (citation omitted). A limited inquiry into a party's religious practices is permissible if (1) the practices may negatively impact a child's physical or mental health or safety, and (2) the inquiry is limited to such impact. *Id.* Nevertheless, when a party fails to object to such religious inquiry at trial or fails to raise an argument as to impairment of his or her constitutional rights at trial, the party waives his or her right to argue this issue on appeal. *Sinnett v. Sinnett,* ___ N.C. App. ___, 920 S.E.2d 396, 406–07 (2025).

Here, Father argues numerous of the trial court's findings of fact were not supported by substantial evidence. We will address each challenged finding below.

### 1. *Finding of Fact 5.a.*

Finding of Fact 5.a. states:

> 5.a. Father met [M]other online when she was fifteen (15) years old high school student, suffering from an eating disorder, and dealing with very broken home structure.

Father contends the record fails to support part of Finding of Fact 5.a., that Mother, at age fifteen, had an eating disorder when she met Father. Mother testified that she had an eating disorder at fourteen years old; a reasonable mind might adequately accept that the eating disorder continued from her fourteenth year into her fifteenth year. Thus, this part of 5.a. is supported by substantial evidence and is conclusive on appeal. Father further claims part of 5.a., where the trial court found Mother, at age

fifteen, was dealing with a broken home structure, was not sufficiently supported by substantial evidence. We disagree as record evidence exhibits Mother felt like she "never really had a family," at least occasionally feared her own mom, was hit by the metal part of a belt, and more. This evidence substantially supports the finding of a broken home structure.

### 2. *Finding of Fact 5.i.*

Finding of Fact 5.i. states:

> 5.i. Before leaving Kentucky, Father told Mother to leave a fake suicide note for her family, and to throw her phone in a river so that she could not be tracked.

Father alleges Finding of Fact 5.i. lacks substantial evidence. Yet, Mother testified that Father wanted her to write a fake suicide letter of her drowning and that Mother left the note in a cabinet for her sister. Mother also testified she threw her phone into the river. This testimony is sufficient to support Finding of Fact 5.i.

### 3. *Finding of Fact 5.k.*

Finding of Fact 5.k. states:

> 5.k. The police brought Mother back to Kentucky, and Father was charged with kidnapping and contributing to the delinquency of a minor.

Father claims Finding of Fact 5.k. is misleading because those charges were dismissed and expunged. It is not the job of this Court to determine whether this finding was misleading; rather we evaluate whether this finding is supported by

substantial evidence. The record indicates Father was indeed charged. Therefore, Finding of Fact 5.k. is supported by substantial evidence.

### 4. *Finding of Fact 5.m.*

Finding of Fact 5.m. states:

> 5.m. Father was told not to have any further contact with Mother, however he did.

Father challenges "Father was told not to have any further contact with Mother" is not supported by any evidence. Father testified he was still allowed to talk with Mother. Mother testified that her mom told *her* to refrain from contacting Father when Mother returned after she initially ran away to Charlotte and Mother assured her mom she was going to cease communications. When Father reached out to Mother, Mother testified she "kind of told him to off basically." Shortly afterward, they resumed the relationship. A reasonable mind would not accept this testimony as adequate to support the trial court's Finding of Fact 5.m. that Father was instructed to end contact with Mother. We agree with Father that Finding of Fact 5.m. is unsupported by substantial evidence.

### 5. *Finding of Fact 5.f.*

Finding of Fact 5.f. states:

> 5.f. Father would call Mother "princess," and ask Mother to call him "Father," "Master," "Daddy," and "Sir."

Father argues the trial court improperly frames Finding of Fact 5.f.'s "requests" as Father's own. While the record evinces contrary evidence that many demands were

Mother's, Mother's testimony demonstrates Father also made such requests including that he had a kink of "daddy daughter" role playing and "also had a kink of [Mother] calling him master." A reasonable person might accept this testimony as adequate to support this finding as Father asking Mother to call him such labels. Therefore, Finding of Fact 5.f. is supported by substantial record evidence, despite contrary evidence.

### 6. *Finding of Fact 5.n.*

Finding of Fact 5.n. states:

> 5.n. [Father] reinitiated contact with Mother and immediately began to assert control over nearly every aspect of Mother's life.

Father challenges Finding of Fact 5.n. as unreasonable because he allegedly could not exert control over Mother from two states away. The record indicates Father contacted Mother first after Mother returned to her own mom's house. Mother testified that she "had to stay on video call with [Father]" including moments of Mother getting dressed, showering, and during the entire night or else Father would "flip out." Additionally, Mother attested Father told her to stop talking to friends who were not Christian, even beginning in high school. Mother's testimony is substantial evidence to support that Father asserted control over Mother's life.

### 7. *Finding of Fact 5.o.*

Finding of Fact 5.o. states:

> 5.o. Father demanded that Mother be on video call with

him at all times, except while she was at school with no reception.

Father alleges Finding of Fact 5.o. is not supported by evidence. As previously stated, Mother testified Father was adamant the couple had to stay on phone calls together for large portions of the day, even as Mother dressed herself, showered, and lay in bed at night. Mother stated the only time they weren't on a call together was when Mother went to school when there was no Wi-Fi. This evidence substantially supports Finding of Fact 5.o.

### 8. *Finding of Fact 5.p.*

Finding of Fact 5.p. states:

> 5.p. Father demanded that he watch her shower, and that she send him explicit photos and videos.

Father argues Finding of Fact 5.p. is not supported by evidence. However, Mother testified Father "requested certain pictures or videos" of Mother in the shower. A reasonable person may accept this testimony as adequate to support Finding of Fact 5.p. This finding is conclusive on appeal.

### 9. *Finding of Fact 5.q.*

Finding of Fact 5.q. states:

> 5.q. Mother was not allowed to have friends in school because they were not Christian.

Father contends Finding of Fact 5.q. is unsupported by record evidence. Yet, as previously mentioned, Mother testified she was not allowed, as instructed by Father,

to have friends because the friends were not Christian. This evidence substantially supports Finding of Fact 5.q.

**10. *Finding of Fact 5.v.***

Finding of Fact 5.v. states:

> 5.v. Father is a Fundamentalist, Old Testament, Christian, who believes in a very direct hierarchy: God, Man, Wife, Child.

Father claims this finding is unsupported by substantial evidence. Father stated he is a Christian who believes "everything that the Bible says . . .exactly what's written." Furthermore, Father does not celebrate Christmas or Easter. A reasonable person may accept Father's testimony as adequate to support that Father is a Fundamentalist Christian. Furthermore, Father testified it makes him feel good when Mother obeys him and wives should ideally obey their husbands. A reasonable mind could accept these testimonial statements as indicative of Father believing in a "hierarchy." Thus, Finding of Fact 5.v. is substantially supported.

Father argues Finding of Fact 5.v. does not explain the required secular purpose that must accompany an inquiry into a party's religious practices. However, Father failed to object to such religious inquiry at trial. Additionally, at trial, Father did not raise an argument as to impairment of his constitutional rights at trial. Thus, Father waived appellate review of this issue.

**11. *Finding of Fact 5.r.***

Finding of Fact 5.r. states:

> 5.r. Father groomed Mother for the next two years until she turned eighteen (18) years old, at which point he arranged for her to go to Tennessee to visit her grandmother.

Father contends Finding of Fact 5.r. is not supported by evidence. "Groom," in this context, means "[t]o gain the trust of or influence over (a child), now often via the internet, as preparation for sexual abuse, exploitation, or trafficking." *Groom*, *Oxford English Dictionary* (2023). Father did initially gain Mother's trust over the internet when she was fifteen, which supports the trial court's use of "groomed" in Finding of Fact 5.r. However, there is a lack of evidence of Father's preparation to sexually abuse, exploit, or traffic Mother. Rather, Father pursued Mother, married her when she turned eighteen, and the couple had a child together. All considering, we hold Finding of Fact 5.r. is unsupported by substantial evidence.

### 12. Finding of Fact 5.w.

Finding of Fact 5.w. states:

> 5.w. When Mother arrived in Charlotte, Father isolated her from everyone. Father did not allow Mother to leave the home without him. Father did not work and supervised Mother's every move.

Father contends "Father isolated [Mother] from everyone" is unsupported by substantial evidence because Mother communicated with Leikela Rehberg, a friend of both Mother and Father. However, Rehberg testified she "didn't get to see [Mother] a lot" in person. We acknowledge Rehberg communicated with Mother regularly. However, contrary evidence in the record does not undermine a trial court's finding.

Additionally, Mother's mom testified she was not allowed to come visit Mother and Father in North Carolina. A reasonable mind could accept these testimonies as adequate to espouse Mother's isolation. Thus, Finding of Fact 5.w. is substantially supported and conclusive on appeal.

### 13. *Finding of Fact 5.x.*

Finding of Fact 5.x. states:

> 5.x. Father controlled the finances and controlled what Mother was allowed to do.

Father alleges Finding of Fact 5.x. is unsupported by substantial evidence. Mother testified she "had to ask [Father] to buy anything." A reasonable mind may accept that Mother's statement constituted Father's control of the finances and what Mother was allowed to do. Consequently, this finding is supported by substantial evidence.

### 14. *Finding of Fact 5.y.*

Finding of Fact 5.y. states:

> 5.y. Father told Mother what to do and when to do it, including when to cook for him and when to clean.

Father alleges this finding is not supported by substantial evidence. However, Mother testified she had to get Father's approval before she did simple household tasks. Also, Mother stated she "had to tell [Father]" when she was making food. These testimonial statements sufficiently support Finding of Fact 5.y.

### 15. *Finding of Fact 5.bb.*

Finding of Fact 5.bb. states:

5.bb. Father controlled when and what Mother ate.

Father claims this finding is not sufficiently supported because Mother could choose what to eat when the couple ate out for meals or ordered in. While Father may show contrary evidence to Finding of Fact 5.bb., Mother also testified Father chose "what he wanted" for groceries and allowed only an estimated $38 grocery budget per week. Father's restrictions on the substance of groceries and the allotment of money per week is sufficient evidence to support Father's control of "what" and "when," respectively.

### 16. *Finding of Fact 5.cc.*

Finding of Fact 5.cc. states:

> 5.cc. Mother had an eating disorder in high school, and Father would not allow her to have soda.

Father argues he did not prohibit Mother from drinking soda and thus alleges Finding 5.cc. is not supported by evidence. Nevertheless, Father and Mother had an agreement where Father was supposed to quit smoking as long as Mother quit drinking soda. Moreover, Mother testified Father controlled what she had to eat or drink. Especially in consideration of prior findings demonstrating Father's governing-like expectancies, this evidence sufficiently supports the finding that Father wouldn't allow Mother to drink soda.

### 17. *Finding of Fact 5.dd.*

Finding of Fact 5.dd. states:

> 5.dd. Father demanded that Mother cook him meals, and
> that she feed him before she feed the baby.

Father contends there is a lack of substantial evidence supporting Finding of Fact 5.dd. We agree. The evidence demonstrates Father would not restrict Noah's food consumption in a way that he needed to eat before her: Father testified "if Noah's hungry then Noah can eat." Furthermore, Mother expressed that Father would heat up food for her during postpartum. Therefore, this finding is not sufficiently supported by substantial evidence.

### 18. *Finding of Fact 5.ee.*

Finding of Fact 5.ee. states:

> 5.ee. Father demanded that Mother be subservient to him
> and obey him.

Father argues this finding is unsupported by substantial evidence. Yet, Father testified that it makes him feel good when Mother obeys him. Also, Mother attested Father emphasized that wives should obey their husbands. A reasonable person might accept this evidence, an emphasis and preference on wives obeying their husbands, as sufficient to support Finding of Fact 5.ee.

### 19. *Finding of Fact 5.aa.*

Finding of Fact 5.aa. states:

> 5.aa. Father would not allow Mother to have contact with
> her family. Father said that her mother was a "heathen,"
> and that she always disobeyed him after speaking with her
> mother.

Father alleges part of Finding of Fact 5.aa. that Mother was not allowed to contact her family is insufficiently supported by evidence. Father points to evidence of Mother calling her mom regularly, often once or twice a week. Yet, the record also shows Father was concerned when Mother talked to her mom a lot. Furthermore, as previously stated, her mom was not allowed to visit Mother and Father when they lived together in North Carolina. A reasonable mind may accept Mother was generally not allowed to contact her family.

Also, even though Father reasons this finding is unsupported because Mother spoke with her mom, Finding of Fact 5.aa. asserts Mother *disobeyed* Father after speaking with her mom. Thus, the finding acknowledges Mother indeed spoke with her mom, so Father's evidence of Mother and her mom speaking is immaterial.

Father also takes issue with the trial court's characterization of Mother's "disobedience." Again, this Court is not responsible for determining the characterization of a finding; rather we determine whether substantial evidence supports this finding. Father expressed Mother "never was really obedient to anybody." A reasonable mind might accept Father's testimony as adequate to support that Mother disobeyed Father.

### 20. *Finding of Fact 5.gg.*

Finding of Fact 5.gg. states:

> 5.gg. Father insisted that Mother have a homebirth with a midwife.

Father challenges Finding of Fact 5.gg. as unsupported by substantial evidence. Mother testified she wanted to give birth at a hospital, but stated Father's idea was to have a homebirth. Despite Father's conflicting testimony that Mother also desired a homebirth, Mother's testimony supports the trial court's finding. Since Mother did have a homebirth even though she didn't want to, a reasonable mind might accept Father insisted she have a homebirth. Thus, Finding of Fact 5.gg. is supported by substantial evidence.

### 21. *Finding of Fact 5.hh.*

Finding of Fact 5.hh. states:

> 5.hh. Mother wanted to give birth at a hospital, because she thought she could tell someone at the hospital what was going on with Father. Father would not allow that.

Father claims Finding of Fact 5.hh. is not supported by substantial evidence. Nonetheless, Mother testified one of the reasons she wanted to give birth at the hospital was to "tell people what was going on" so they could help her. This substantially supports Finding of Fact 5.hh.

### 22. *Finding of Fact 5.nn.*

Finding of Fact 5.nn. states:

> 5.nn. Father demanded that the baby had no sugar, and strictly controlled what she ate.

Father argues there is a lack of substantial evidence to support Finding of Fact 5.nn. The record shows Father ensures Noah "stay[s] away from the sugary stuff."

Additionally, Father tries to "keep her away from ultra processed foods as much as possible." This evidence substantially supports Finding 5.nn.

### 23. Finding 5.ll.

Finding of Fact 5.ll. states:

> 5.ll. Father insisted on control of the baby in the same way he controlled Mother.

Father challenges Finding of Fact 5.ll., claiming it lacks support of substantial evidence. Although Finding of Fact 5.ll. is not entirely precise, record evidence has demonstrated he has controlled aspects of both Mother and Noah's diet. A reasonable mind may find this adequate to support Finding 5.ll.

### 24. Finding of Fact 6

Finding of Fact 6 states:

> 6. Father is co-sleeping with the minor child.

Father challenges the characterization of Finding of Fact 6. Father acknowledged his co-sleeping with Noah the "whole time" since she was born. Even though evidence shows Mother also co-sleeps with Noah, it does not alter the substantial evidence supporting Finding of Fact 6 that Father co-sleeps. Therefore, this finding is conclusive on appeal.

### 25. Finding of Fact 7 [4]

Finding of Fact 7 states:

> 7. Father asked Mother to spank the child when it became necessary because he did not want to be turned on by the spanking.

Father contends Finding of Fact 7 is unsupported by evidence. We agree. The record does not support that *Father* would be turned on; rather, as evidenced by both Mother and Father's testimonies, Father commented he shouldn't spank Noah when she grew up because Father did not want *Noah* to be "turned on." Father hypothesized Noah may take after Mother in liking older men. Thus, Finding of Fact 7 is not sufficiently supported by evidence.

### 26. *Finding of Fact 8*

Finding of Fact 8 states:

> 8. Father wants to homeschool the child in a church community, so that the child will "learn her place in the world."

Father alleges Finding of Fact 8 is not supported by substantial evidence. Father testified he wanted to homeschool Noah when she was of age, but that she currently thrives in their church community. Thus, the trial court inaccurately conflated the homeschool community with the church community. Furthermore, the finding is overly broad that the sole reason Father wants to homeschool Noah is for her to learn her place in the world. Therefore, Finding of Fact 8 is unsupported by substantial evidence.

### 27. *Finding of Fact 10*

Finding of Fact 10 states:

> 10. There are already signs that Father is grooming the child.

Father challenges Finding of Fact 10 as unsupported by substantial evidence. There is a lack of evidence to support this finding. Finding of Fact 7 would have supported this finding, but we hold Finding of Fact 7 is unsupported by substantial evidence. We hold there is not substantial evidence to support the finding that Father is grooming Noah.

### 28. *Finding of Fact 11*

Finding of Fact 11 states:

> 11. Father is a pedophile and takes sexual interest in children.

Father contends Finding of Fact 11 is not supported by substantial evidence. A "pedophile," as defined by Black's Law Dictionary, is a person "who engages in pedophilia," or a person "who is sexually attracted to children." *Pedophile*, Black's Law Dictionary (12th ed. 2024). Father began romantically communicating with Mother when she was fifteen years old. Further, Mother testified that, before Mother and Father's relationship began, Father had romantic interest in two other girls younger than sixteen, the age of consent in North Carolina. A reasonable person may accept this evidence as adequate to support that Father was sexually attracted to children and therefore is a pedophile. Thus, Finding of Fact 11 is supported by substantial evidence.

### 29. *Finding of Fact 12*

Finding of Fact 12 states:

12. Before meeting Mother online, Father took interest in other fourteen (14) and fifteen (15) year old girls.

Father alleges Finding of Fact 12 is not supported by sufficient evidence. Mother's testimony of Father previously having relationships with a fourteen-year-old girl and another fifteen-year-old girl substantially supports Finding of Fact 12.

### 30. *Finding of Fact 9*

Finding of Fact 9 states:

9. There is a grave danger to this minor child should she be allowed to live in Father's care.

Father challenges Finding of Fact 9 as unsupported by evidence. We agree with Father. Grave danger signals a serious or imminent possibility of harm. The record fails to demonstrate potential for Noah's serious or imminent harm. Thus, Finding of Fact 9 is unsupported by substantial evidence.

### 31. *Finding of Fact 14*

Finding of Fact 14 states:

14. The [c]ourt finds that Mother is a fit and proper person to have full physical and legal custody of the minor child.

Father claims the trial court's order lacks substantial evidence to support Finding of Fact 14. This finding is essentially a conclusion of law, so Finding of Fact 14 will be treated as a conclusion of law reviewable on appeal.

In terms of Mother's fitness to care, the trial court failed to make any findings related to Mother's mental health, including past depressive episodes and suicidal thoughts and current syncopal episodes, which can intermittently result in Mother

passing out, failing to remember certain things, and hitting her head. These current symptoms could present possible safety and supervision concerns for Noah. Moreover, the trial court failed to make a finding from record evidence demonstrating that, after two-week terms with Mother, Noah lost weight.

Additionally, Mother's living environment may be problematic for Noah based on evidence of accessible chemical cleaning supplies, hazardous clutter, reachable medication pills, loose electrical cords that could cause electrical shock or accidental strangulation, and possible dog feces in reach due to the dog's indoor bathroom mat. Further, Mother allegedly dismissed concerns regarding Noah playing with medicine bottles containing pills.

There are insufficient findings regarding Mother's fitness to care for Noah.

### 32. *Finding of Fact 15*

Finding of Fact 15 states:

> 15. The [c]ourt finds that Father is fit and proper to have supervised visitation with the minor child in Kentucky, one time per month for a period of two hours.

Father argues Finding of Fact 15 is unsupported by substantial evidence. As essentially a conclusion of law, Finding of Fact 15 will be treated as a conclusion of law on appeal. Just as registered sex offenders are not automatically precluded from visitation rights, the trial court's finding that Father is a pedophile does not automatically preclude him from visitation. The supported findings on appeal do not support Father's supervised two-hour visit once a month.

We vacate the custody order and remand to the trial court. The trial court may hear additional evidence in its discretion.

### III.    Conclusion

The remaining findings do not support the trial court's conclusions of law. We vacate the trial court's permanent child custody order and remand.

VACATED AND REMANDED.

Chief Judge DILLON and Judge FLOOD concur.

Report per Rule 30(e).